Milton BARCLAY, Petitioner,

v.

W. Lawrence CAMPBELL,
M.D., Respondent.

No. C–3854.

Supreme Court of Texas.

Jan. 8, 1986.

Rehearing Denied March 5, 1986.

Law offices of Windle Turley, Paula Fis-
ette Sweeney, Dallas, for petitioner.

Thompson & Knight, David S. Kidder, and Maureen Murry, Dallas, for respondent.

McGEE, Justice.

This is a medical malpractice case. Milton Barclay sued Dr. W. Lawrence Campbell, alleging that the doctor negligently prescribed certain drugs for Barclay and negligently failed to disclose to Barclay certain risks associated with the drugs. The trial court granted a partial directed verdict in favor of Dr. Campbell on informed consent and submitted the remaining negligence issues to the jury. The jury did not find Dr. Campbell negligent in his treatment of Barclay and the trial court rendered a take-nothing judgment against Barclay. The court of appeals affirmed the trial court judgment, holding that the trial court did not err in directing a verdict for Dr. Campbell on the issue of informed consent. 683 S.W.2d 498. We disagree. The issue of informed consent should have been submitted to the jury. Therefore, we reverse the judgment of the court of appeals and remand the cause to the trial court.

Barclay was referred to Dr. Campbell in January of 1978 by his employer's company physician. Dr. Campbell treated Barclay for mental illness and during the course of treatment prescribed certain neuroleptic drugs for Barclay. In a small percentage of cases, these drugs produce a condition known as tardive dyskinesia. This condition is marked by involuntary muscle movements. The evidence is undisputed that Dr. Campbell did not warn Barclay of the risks associated with the neuroleptic drugs, and Barclay now suffers from tardive dyskinesia.

This cause is governed by the Medical Liability and Insurance Improvement Act, TEX.REV.CIV.STAT.ANN. art. 4590i (Vernon Supp.1985), enacted in 1977. The Act changed the common-law locality rule concerning the physician's duty of disclosure, based on the "reasonable medical practitioner" standard, declared in *Wilson v. Scott*, 412 S.W.2d 299, 302 (Tex.1967). The Texas Medical Disclosure Panel was estab-

lished by the Act to determine which risks related to medical care should be disclosed. Section 6.07(a) of the Act creates a rebuttable presumption of negligence when the physician has failed to disclose a risk found on the list. Section 6.07(b) provides that if the panel has made no determination concerning the disclosure of risks attendant to a particular medical procedure in question, the physician is under the "duty otherwise imposed by law." TEX.REV.CIV.STAT. ANN. art. 4590i, § 6.07(a) and (b) (Vernon Supp.1985). In our case, the panel has not made a determination of risk disclosure associated with neuroleptic drug ingestion. Consequently, this cause falls under section 6.07(b) of the Act.

In *Peterson v. Shields*, 652 S.W.2d 929, 931 (Tex.1983), we held that the "duty otherwise imposed by law" meant the duty imposed by section 6.02 of the Act, that is, "to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent." Section 6.02 replaces the common-law locality rule with a "reasonable person" rule. *Id.* at 931. Thus, the focus shifts from the "reasonable medical practitioner" standard to the "reasonable person" standard which asks what risks are material to making the decision to give or withhold consent to a particular medical procedure.

■ If no presumption has been established by the Act, the plaintiff must prove by expert testimony that the medical condition complained of is a risk inherent in the medical procedure performed. *Id.* The expert should also "testify to all other facts concerning the risk which show that knowledge of the risk could influence a reasonable person in making a decision to consent to the procedure." *Id.*

■ According to *Peterson*, the plaintiff must meet two requirements to raise a fact issue. First, the plaintiff must introduce evidence to show the risk is inherent to the medical procedure undertaken. Second, the plaintiff must introduce evidence to show that the risk is material in the sense

that it could influence a reasonable person's decision to consent to the procedure. If the plaintiff meets both of these requirements, a fact issue is raised so that the plaintiff is entitled to the submission of two issues.

The first issue asks whether the condition complained of is a risk inherent to the medical procedure performed. If the jury answers this issue affirmatively, the jury considers the second issue. The second issue asks could this inherent risk, if any, influence a reasonable person in making a decision to consent to the procedure.

■ In our case, there was expert testimony introduced at trial that tardive dyskinesia is an inherent risk associated with neuroleptic drugs. Inherent means that the risk is one which exists in and is inseparable from the drug itself. Tardive dyskinesia arises from the use of the drug and not from any defect in the drug or negligent human intervention. Certain precautions must be taken in prescribing the drug due to the inherent risks associated with the medication.

■ There was also expert testimony introduced at trial concerning the probabilities of contracting tardive dyskinesia. The testimony was that the risk to Barclay of contracting tardive dyskinesia was small to extremely small. The court of appeals concluded that this testimony constituted no evidence that the risk was material. The issue was whether there was some expert evidence to find that the risk was material enough to influence a reasonable person to give or withhold consent to treatment. We hold that the expert testimony concerning the probabilities of contracting tardive dyskinesia is some evidence that the risk was material enough to influence a reasonable person in his decision to give or withhold consent to the procedure.

■ There was also other evidence presented which bears on the materiality of the risk. This includes how the condition manifests itself; the permanancy of the condition caused by the risk; the known cures for the condition; the seriousness of the condition; and the overall effect of the condition on the body. Barclay introduced evidence concerning all of these factors which were relevant facts a jury would consider in determining whether the risk was material. We hold that he met the requirements of *Peterson* and was entitled to have issues submitted to the jury on the issue of informed consent.

Nevertheless, the court of appeals held that the undisputed evidence established that Barclay did not have the reactions of a reasonable person. Relying on section 6.07(a)(2) of the Act, the court of appeals held that it was the legislature's intent to excuse a defendant who is negligent in failing to disclose a risk if it was not medically feasible to make the disclosure. The court of appeals concluded that even if the risk was material and, therefore, should have been disclosed, Dr. Campbell was excused from making the disclosure because it was not medically feasible. The testimony used to support this conclusion was that Barclay did not have the reactions of a reasonable person because he was suffering from schizophrenia. The consensus of the expert testimony was that had Barclay known of the risk of side effects like tardive dyskinesia, it probably would have caused him to refuse the treatment, no matter how minimal the risk and how great the counterveiling risk of refusing the medication.

■ While we appreciate the dilemma facing a psychiatrist in such a position, we hold that it was not the legislature's intent to take away an individual's right to make such decisions for himself just because his doctor does not believe his patient is reasonable. The court of appeals applied a subjective standard to determine if Barclay was entitled to be informed of the risk. The Act requires the application of an objective standard. The issue is not whether Barclay could have been influenced in making a decision whether to give or withhold consent to the procedure had he known of the risk. Rather, the issue is whether a "reasonable person" could have been influenced in making a decision whether to give or withhold consent to the procedure had he known of the risk. If a "reasonable person" could have been influenced, then

Barclay was also entitled to be warned of the risk.

The right to make medical decisions for one's self has been recognized in numerous decisions as one encompassed by the right of privacy under the United States Constitution. *See Carey v. Population Services International*, 431 U.S. 678, 684, 97 S.Ct. 2010, 2015–16, 52 L.Ed.2d 675 (1977); *Roe v. Wade*, 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). One does not automatically lose that right because of mental illness. A person suffering from a mental illness is guaranteed all the rights, benefits, responsibilities and privileges afforded by the constitutions and laws of the United States and Texas. TEX. REV.CIV.STAT.ANN. art. 5547–80(a) (Vernon Supp.1985). This includes making one's own medical decisions.

Barclay introduced the required expert testimony and, therefore, was entitled to issues on the question of informed consent. Barclay's mental illness does not foreclose his right to be informed of the risk if the jury finds the risk is material in the sense of one which could influence a reasonable person in making a decision to give or withhold consent to the procedure. We reverse the judgment of the court of appeals and remand the cause to the trial court for trial on the issue of informed consent.