Cynthia GALVAN and Julian Galvan, Appellants,

v.

Sally DOWNEY, M.D., Appellee.

No. 14–95–00143–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 24, 1996.

Rehearing Overruled Nov. 21, 1996.

Walter R. Grimes, Alan J. Winters, Houston, for appellants.

Trace J. Sherer, Barbara Hilburn, Houston, for appellee.

Before YATES, O'NEILL and CANNON,* JJ.

## OPINION

CANNON, Justice.

This medical malpractice case comes to us on appeal from the trial court's granting summary judgment in favor of appellee, Sally Downey, M.D. Appellants assert three points of error first claiming the trial court erred in granting summary judgment because a fact issue existed as to whether Dr. Downey had a duty to obtain informed consent. They also allege the trial court erred in granting a motion for mistrial after the first trial and failing to grant a motion to recuse. We affirm.

### FACTS AND PRIOR POSTURE

Appellants, the Galvans, brought a medical malpractice claim against Dr. Downey alleging that the doctor failed to obtain informed consent when she placed an umbilical catheter into their sick newborn child after his

---

* Justice Bill Cannon sitting by designation.

318

condition dramatically deteriorated. The child later died. This suit went to trial and a jury returned a favorable verdict for the Galvans. The trial judge subsequently granted a mistrial. After the motion for mistrial was granted, the Galvans filed a motion to recuse the trial judge. A visiting judge denied the motion and the Galvans filed a petition for writ of mandamus. The First Court of Appeals denied the mandamus. The case returned to its pretrial status and several months later Dr. Downey moved for summary judgment based on the issue of informed consent. The trial court granted Dr. Downey's motion for summary judgment and rendered a take nothing judgment. A motion for severance was filed, making the interlocutory summary judgment final. Thereafter, this appeal ensued.

## STANDARD OF REVIEW

The movant for summary judgment must show that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). We take evidence favorable to the non-movant as true, and indulge every reasonable inference in the non-movant's favor. *Id.* Summary judgment for the defendant is proper when the proof shows that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action. *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex. 1990); *White v. Wah*, 789 S.W.2d 312, 315 (Tex.App.—Houston [1st Dist.] 1990, no writ). In other words, a defendant must disprove, as a matter of law, one of the essential elements of a plaintiff's cause of action. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991).

## POINTS OF ERROR

In the Galvans' first point of error, they allege the trial court erred in granting Dr. Downey's motion for summary judgment because a fact issue existed as to whether Dr. Downey had a duty to obtain informed consent. Specifically, they contend Dr. Downey was negligent when she failed to disclose the material risk involved in the procedure per-

formed, and an emergency or medical excuse did not exist to negate that duty. The Galvans assert they raised fact issues on both elements.

A claim based upon a doctors' failure to fully inform a patient of the risks of surgery is a negligence cause of action, which is governed by the Medical Liability and Insurance Improvement Act of Texas (the "Act"). *See* Tex.Rev.Civ. Stat. Ann. art. 4590i (Vernon Supp.1995); *McKinley v. Stripling*, 763 S.W.2d 407, 409 (Tex.1989). The Act created the Texas Medical Disclosure Panel (the "Panel") to determine which risks and hazards must be disclosed to patients undergoing medical care and surgical procedures. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 6.03(a) (Vernon Supp.1995). The Panel prepares lists of surgical procedures and treatments that require disclosure of risks. The Panel also establishes the form and degree of disclosure required for each. *Id.* § 6.04(b).

Disclosure of a risk in compliance with the Act creates a rebuttable presumption that the physician was not negligent in failing to disclose the risk. *Id.* § 6.07(a)(1). Similarly, a failure to disclose the risk of a procedure or treatment as indicated by the Panel creates a rebuttable presumption that the doctor was negligent. *Id.* § 6.07(a)(2).

If the Panel has made no determination regarding the duty of disclosure for a procedure or treatment, the physician is under the "duty otherwise imposed by law." Tex.Rev.Civ. Stat. Ann. art. 4590i, § 6.07(b) (Vernon Supp.1995). This duty is the same as that imposed in section 6.02 of the Act, namely, "to disclose all risks or hazards which could influence a reasonable person in making a decision to consent to the procedure." *Peterson v. Shields*, 652 S.W.2d 929, 931 (Tex.1983). The parties agree that the Panel has not made any determination concerning the disclosure of any risks associated with an umbilical artery catheterization. Because no presumption has been established by the Act, the plaintiff must prove by expert testimony that the medical condition complained of is a material risk inherent in the medical procedure performed. *Barclay v. Campbell*, 704 S.W.2d 8 (Tex.1986). The

plaintiff must prove by expert testimony the existence of two elements: (1) the risk was inherent to the medical or surgical procedure undertaken, and (2) the risk was material, in that it could influence a reasonable person's decision to consent to the procedure. *Id.* at 8; *Knapp v. Eppright,* 783 S.W.2d 293, 296 (Tex.App.—Houston [14th Dist.] 1989, no writ). The expert should also "testify" to all other facts which show that knowledge of the risk could influence a reasonable person in making a decision to consent to the procedure. *Knapp,* 783 S.W.2d at 296; *Beal v. Hamilton,* 712 S.W.2d 873, 877 (Tex.App.—Houston [1st Dist.] 1986, no writ).

■ Dr. Downey, a neonatologist, submitted her motion for summary judgment alleging that she negated the second essential element of the plaintiff's cause of action, material risk. Dr. Downey relies upon her affidavit and the deposition testimony of Dr. Michael Speer, another neonatologist. Dr. Downey contends that her summary judgment evidence proved that the risk complained of, that is the perforation to the artery upon placement of the catheter, was not a material risk as a matter of law. Dr. Downey submitted, alternatively, that if a duty existed for her to obtain informed consent, a medical emergency existed negating any necessity to obtain informed consent. Dr. Downey's affidavit stated in pertinent part:

Jonathan Galvan was born on March 28, 1990, by emergency cesarian section after his mother presented to Memorial Northwest Hospital with maternal hemorrhaging. I was asked to consult in Jonathan Galvan's care by his attending pediatrician, Dr. Thaaker, within hours of his birth. Infant Galvan was several weeks premature.

When I initially saw Jonathan Galvan, he was suffering from several medical problems including breathing difficulties, a low blood count, and low blood pressure. Over the next several hours his condition continued to deteriorate. At or around 1:30 p.m. on March 28, 1990, because of his deteriorating condition and increasing need for oxygen, I placed an umbilical artery catheter. Based on my experience and training in taking care of sick newborn babies such as Jonathan Galvan, when the medical decision is made to place a catheter, the catheter is placed immediately because any delay could seriously compromise the infant's health.

Because of Jonathan Galvan's urgent need for medical treatment, specifically the placement of an umbilical artery catheter, I did so without written consent.

Furthermore, **the risk of perforation to the umbilical artery from the placement of an umbilical artery catheter is extremely rare. It is my expert opinion that the complication, umbilical artery perforation, which Jonathan Galvan experienced was not a material risk to the procedures which were performed.**

Based on my review of the medical records, my experience, education, and training, it is my expert opinion based on a reasonable degree of medical probability that the medical evaluations and treatment provided to Jonathan Galvan by me for his prematurity and respiratory distress as well as my clinical judgments in performing my medical treatments were appropriate and the standard of care for a neonatologist in the treatment of a patient such as Jonathan Galvan who was experiencing an urgent and life threatening medical condition.

■ The appellee's affidavit is clear, direct, positive, credible and free from contradictions and inconsistencies. Once the defendant-movant negates one or more of the essential components of the plaintiff's cause of action, the burden shifts to the non-movant to produce controverting evidence raising an issue of fact as to the element or elements negated. *See Lear Siegler,* 819 S.W.2d at 471; *Greene v. Thiet,* 846 S.W.2d 26, 29 (Tex.App.—San Antonio 1992, writ denied). Once Dr. Downey established that the risk of perforation to the umbilical artery from the placement of a catheter is extremely rare and not a material risk to the procedures that were performed, the burden shifted to the Galvans to produce controverting evidence.

The Galvans assert they raised a fact issue as to the element of material risk through their expert, Dr. Bloss, who testified by deposition as follows:

But I can tell you that every—a large percentage of babies that—in whom umbilical arteries are attempted to be passed have umbilical artery injuries. **And so we're talking about a spectrum of a common event when we're talking about what happened to Jonathan Galvan. I know that because I am often called upon to do a cutdown for umbilical artery access in those—for babies for whom a catheter could not be passed by the neonatologist. And every time I do that, there's evidence of damage to the vessel by trying to pass the catheter.**

Citing *Barclay,* the Galvans argue that even an extremely small risk may be material enough to influence a reasonable person in his decision to give or withhold consent. *Barclay,* 704 S.W.2d at 10.

In *Barclay,* the plaintiff, Barclay, sued his doctor for medical malpractice, alleging the doctor negligently prescribed certain medications in connection with his psychiatric treatment that were known to sometimes produce a condition known as tardive dyskinesia. Specifically, Barclay alleged the doctor negligently failed to disclose certain risks associated with the prescribed medications. The trial court granted a partial directed verdict relating to the issue of informed consent, and the Dallas Court of Appeals affirmed. *See Barclay v. Campbell,* 683 S.W.2d 498 (Tex.App.—Dallas 1984), *rev'd,* 704 S.W.2d 8 (Tex.1986).

Barclay's treating physician testified that because of Barclay's age he was at extremely low risk, less than one-half of one percent, for developing tardive dyskinesia. Another doctor, a neurologist with a special interest in tardive dyskinesia, testified that the drugs administered by the treating doctor could cause tardive dyskinesia, yet the risk was small. The last doctor to testify on the subject, a psychiatrist, testified that the risk of tardive dyskinesia from the drugs used was extremely small in a patient of Barclay's age.

The Dallas Court of Appeals held that the presumption of negligence was rebutted by the expert testimony which established that Barclay did not have the reactions of a reasonable person and therefore, it was not medically feasible to disclose the risk associated with tardive dyskinesia. *Id.* at 502. However, the Texas Supreme Court reversed the court of appeals, finding that there was evidence presented that the risk of contracting tardive dyskinesia was inherent to the drug, although small to extremely small, and that Barclay had presented additional evidence which was relevant to the element of materiality of risk, such as: how the condition manifests itself; the permanency of the condition caused by the risk; the known cures for the condition caused by the risk; the seriousness of the condition; and the overall effect of the condition on the body. *Barclay,* 704 S.W.2d at 10. The supreme court concluded that the record contained some evidence that the risk was material. *Id.*

In the present case, the expert testimony of Dr. Bloss did not controvert the summary judgment proof that the risk of umbilical perforation was not material. After reviewing Dr. Bloss' entire deposition testimony attached to the Galvans' motion for summary judgment, we do not find any evidence that the placement of the umbilical artery catheter into infant Galvan created a material risk of perforation so as to influence a reasonable person in the decision to consent to the procedure. The Galvans rely on Dr. Bloss' testimony, "[W]e're talking about a spectrum of a common event when we're talking about what happened to Jonathan Galvan," to prove that perforation of the umbilical artery during the placement of the catheter was a material risk. However, Dr. Bloss' statement must be viewed in its context. Dr. Bloss' testimony did not refer to the risk of perforation of the umbilical artery. Rather, Dr. Bloss' testimony referred generally to umbilical artery *injuries.* Unlike in *Barclay,* Dr. Bloss did not offer his expert opinion on how the condition manifests itself, the permanency of the condition caused by the risk, the known cures for the condition, the seriousness of the condition, and the overall effect of the condition on the body. We find no controverting evidence from Dr. Bloss that the risk of umbilical artery perforation from the placement of an umbilical artery catheter was a material risk.

The Galvans also allege that Dr. Downey created a fact issue herself in her own affidavit where she states, "The risks—the main

risks [to placing an umbilical artery catheter] are introducing infection and bleeding." Dr. Bloss offered summary judgment evidence that supported Dr. Downey's position that cutting the umbilical cord after birth naturally causes some injury to the umbilical artery, and some bleeding occurs after the cut for a short period of time. The injury caused by leaving an umbilical artery catheter in an infant too long is not the injury complained of in this case. Therefore, applying the review test previously set forth, we conclude that the Galvans did not submit controverting evidence sufficient to rebut Dr. Downey's clear summary judgment proof that the risk of perforation in placing the umbilical artery catheter into infant Galvan was material.

The Galvans also assert that Dr. Downey did not establish that a medical emergency existed that obviated the necessity for her to obtain informed consent. We need not examine this contention since we find that Dr. Downey negated, as a matter of law, one of the essential elements of the Galvans' cause of action. *See Lear Siegler*, 819 S.W.2d at 471. We overrule the Galvans' first point of error.

The Galvans assert in their second point of error that the trial court erred in granting a mistrial. Specifically, the Galvans assert they were denied their right to a full appeal because the trial court granted a mistrial after they received a favorable jury verdict. Subsequently, the trial court granted summary judgment against them. The Galvans contend we should review the summary judgments ruled on before trial, the trial, and the summary judgment granted after the mistrial. An order declaring a mistrial is an interlocutory order and is not appealable. *Fox v. Lewis*, 344 S.W.2d 731, 734 (Tex.Civ.App.—Austin 1961, writ ref'd n.r.e.). A trial court has plenary power over its judgment until it becomes final and retains continuing control over interlocutory orders and has power to set aside those orders any time before a final judgment is entered. *Fruehauf Corp. v. Carrillo*, 848 S.W.2d 83, 84 (Tex.1993); *Biaza v. Simon*, 879 S.W.2d 349, 357 (Tex.App.—Houston [14th Dist.] 1994, writ denied).

The Galvans' proper remedy for appealing the granting of an interlocutory order, in this case, the mistrial, is by mandamus. *See Rod Ric Corporation v. Earney*, 651 S.W.2d 407, 408 (Tex.App.—El Paso 1983, no writ); *Ware v. Marquez*, 511 S.W.2d 594, 596–97 (Tex.Civ.App.—El Paso 1974, no writ). The Galvans filed a mandamus, which was denied by the First Court of Appeals. Therefore, the Galvans have not been denied a full appeal. Because we cannot review an interlocutory order, i.e., the mistrial, the Galvans' second point of error is overruled.

The Galvans' third point of error alleges the trial judge erred in denying the motion to recuse. The Galvans allege the trial judge was not impartial and he deprived them of a fair trial. Although a hearing on the motion to recuse was held in accordance with Texas Rules of Civil Procedure 18A, the record is devoid of any evidence on the motion to recuse. The Galvans have failed to preserve error because there is nothing in the record for our review. *Grider v. Boston*, 773 S.W.2d 338, 346 (Tex.App.—Dallas 1989, writ denied); *Evans v. Hoag*, 711 S.W.2d 744, 746 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). The Galvans' third point of error is overruled.

The judgment of the trial court is affirmed.