NO. 07-10-0197-CV

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL C

 JANUARY 27, 2011
 _____________________________

 BROCK LOVETT, D.C.,

 Appellant
 v.

 AARON FELTON,

 Appellee
 _____________________________

 FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

 NO. 96,370-E; HONORABLE DOUGLAS WOODBURN, PRESIDING
 _____________________________

 Opinion
 _____________________________

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.
 Brock Lovett, D.C. (Lovett), appeals from a judgment entered
against him for personal injuries suffered by Aaron Felton (Felton),
which injuries were allegedly caused by chiropractic manipulation.
Lovett poses five issues for our review. We need only address that
which involves whether he had a duty to inform Felton of the chance of
suffering a dissected vertebral artery from a cervical spine
manipulation. We reverse and render judgment.
 Background
 Felton, a twenty-nine-year-old carpet layer, experienced neck
pain and headaches radiating into his eye after heavy lifting at work.
 He consulted Lovett on February 21, 22, and 23, 2006. In the first
two sessions, Lovett performed a manipulation of Felton’s neck without
providing relief. In the third session, Lovett performed a more
forceful manipulation resulting in a release of the joint, but Felton
immediately began experiencing blurred vision, nausea, dizziness, and
a headache. Lovett called for an ambulance and had Felton transported
to the hospital. Felton suffered a stroke as a result of a dissection
of a vertebral artery. He remained in the hospital for ten days and
did not work for two years. He still suffers from headaches and
double vision.
 A dissection of the artery results in a tear of the lining of
the blood vessel. Many dissections are asymptomatic and resolve on
their own. However, on rare occasions, the artery can swell and
narrow the opening or a blood clot forms at the location of the tear,
either of which interrupts the blood supply to the brain causing a
stroke. Felton sued Lovett based on three theories of negligence: 1)
Lovett was too forceful in his third manipulation, thereby causing the
artery dissection which resulted in a stroke, 2) Felton was already
suffering a dissection when he came to see Lovett and Lovett should
have recognized it and not performed any manipulations which then
resulted in the stroke, and 3) Lovett failed to inform Felton of the
risks and dangers of chiropractic treatment. The jury rejected the
first two contentions and found for him on the third.

 Informed Consent
 Causes of action for informed consent are medical malpractice
cases governed by §74.101 of the Civil Practice and Remedies Code.
Schaub v. Sanchez, 229 S.W.3d 322, 323 (Tex. 2007). That statute
provides:
 In a suit against a physician or health care provider involving a
 health care liability claim that is based on the failure of the
 physician or health care provider to disclose or adequately
 disclose the risks and hazards involved in the medical care or
 surgical procedure rendered by the physician or health care
 provider, the only theory on which recovery may be obtained is
 that of negligence in failing to disclose the risks or hazards
 that could have influenced a reasonable person in making a
 decision to give or withhold consent.[1]

Tex. Civ. Prac. & Rem. Code Ann. §74.101 (Vernon 2005). A
chiropractor is a health care provider under the statute. Id.
§74.001(a)(12)(A)(v). And, whether the chiropractor at bar violated
§74.101 depends upon whether he failed to disclose that which he had a
duty to mention.
 The Texas Medical Disclosure Panel, an entity created by the
Texas Legislature, is charged with developing a list of risks and
hazards which must be disclosed to patients. Id. §74.102(a) (Vernon
Supp. 2010). However, its list is not all encompassing. There may be
instances of medical and surgical procedures which the panel has not
addressed. Should such an instance arise, like it did here, the
provider or physician is not free to remain silent. Rather, he still
must comply with the duties to disclose imposed upon him by laws other
than §74.101 et seq. Id. §74.106(b) (Vernon 2005). One such duty is
to inform the patient of risks “inherent” in the medical procedure to
be performed. Binur v. Jacobo, 135 S.W.3d 646, 654 (Tex. 2004);
Barclay v. Campbell, 704 S.W.2d 8, 9 (Tex. 1986).
 To be inherent, the risk must be one that exists in and is
inseparable from the procedure itself. Barclay v. Campbell, 704
S.W.2d at 10. For instance, in Barclay, the Supreme Court had to
decide whether the failure to disclose that tardive dyskinesia was a
risk of ingesting certain drugs fell short of complying with the duty
to disclose. It explained that for the dyskinesia to be an inherent
risk in taking the drug, the condition must arise from using the drug
and not from any defect in the drug or from negligent human
intervention. Id. In other words, the drug or procedure must alone
present the risk for the latter to be inherent in the former; it is
not enough if some additional factor, independent of the procedure,
exists or occurs for the risk to arise.
 The procedure at bar involved a manipulation of the cervical
spine, while the risk consisted of a ruptured or dissected vertebral
artery as a result of the manipulation. That Lovett did not inform
Felton of the risk is undisputed. Whether he had to is not.
 Lovett’s expert testified that “there is a risk from doing . . .
manipulations to the cervical spine because if there is a problem with
the vertebral artery, a . . . manipulation . . . could exacerbate that
or increase the symptoms or cause more damage.” (Emphasis added). He
also opined that “any type of manipulation, if there’s a problem with
that [vertebral] artery or if the adjustment is delivered improperly,
that area can be compromised with the consequences being very severe.”
 (Emphasis added). When asked if he had an opinion “as to whether or
not a chiropractor, if he performs a neck adjustment correctly, can
injure a healthy artery,” the expert replied “. . . a properly
administered . . . adjustment cannot harm a healthy vertebral artery.”
 (Emphasis added). The latter statement comports with testimony to
the effect that “[c]urrent medical literature indicates that it is
highly unlikely, if not impossible, for a cervical spine manipulation
to injure a healthy vertebral artery.” He also stated that for the
manipulation to have caused the dissection suffered by Felton, one of
two other circumstances would have had to exist or occur. First,
Felton’s vertebral artery would have to have been unhealthy or,
second, the manipulation would have to have been applied improperly.
From this, we see that the potential for a dissection of the vertebral
artery arose only when some other factor or condition was present. If
neither of those additional indicia was present, the manipulation
would not have resulted in an arterial dissection. So, the potential
for the latter to occur did not exist in the procedure itself; nor was
it inseparable from the procedure.
 Simply put, the injury suffered by Felton was not an inherent
risk of which Lovett had a duty to disclose at the time. To the
extent that the jury found otherwise, it erred as a matter of law.
See Powers v. Floyd, 904 S.W.2d 713, 715 (Tex. App.–Waco 1995, writ
denied) (stating that whether the physician had a duty to disclose
particular information is a legal question). Moreover, the error was
harmful for it was the basis upon which judgment was entered. Thus,
we sustain Lovett’s contention that he had no duty to inform Felton of
the potential for arterial dissection before administering the spinal
manipulation, reverse the trial court’s judgment, and render judgment
denying Felton recovery against Lovett.

 Brian Quinn
 Chief Justice

-----------------------
 [1]Medical care is defined to mean “any act defined as practicing
medicine . . . by one licensed to practice medicine in this state . .
. .” Tex. Civ. Prac. & Rem. Code Ann. §74.001(a)(19) (Vernon 2005).
Lovett argued in his motion for new trial that he is not licensed to
practice and does not practice medicine so he does not fall within the
provisions of the statute. However, he did not raise this theory
prior to trial.