# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-13-00482-CV
---

**Jeffrey D. Smith, Appellant**

**v.**

**Jason Wall, D.D.S., Appellee**

---
### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 391ST JUDICIAL DISTRICT
### NO. D-13-0043-C, HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

Jeffrey D. Smith appeals from a district court final judgment dismissing, for failure to serve the expert report required by the Medical Liability Act (MLA), a health care liability claim he asserted against Jason Wall, D.D.S. We will reverse the district court's judgment and remand for further proceedings.

## BACKGROUND

Smith filed the underlying suit alleging that Wall committed professional negligence by failing to obtain Smith's informed consent prior to performing an extraction of Smith's "mandibular third molar on his left side," more commonly known as a "wisdom tooth." Smith pled that during the extraction procedure, Wall "slipped while using the East/West elevators (a sharp pair of forceps) thereby lacerating Mr. Smith's gum tissue and severing his lingual nerve," causing "loss of sensation and taste to the left side of [his] tongue and the floor of his mouth to the midline."

Smith described this injury as "ongoing, and in all likelihood, permanent." Smith sought recovery for his alleged injuries in part under a theory that Wall acted negligently in failing to inform him of the risk of lingual nerve damage prior to performing the procedure.[1]

There is no dispute that Smith's claim against Wall, a dentist, is a "health care liability claim" under the MLA.[2] Accordingly, in an attempt to comply with the MLA's expert-report requirement, Smith timely served Wall with a report from James D. Bates, D.D.S., M.D., along with Bates's curriculum vitae.[3] Wall timely objected to the sufficiency of Bates's report, asserting that the report had failed to adequately set forth, and was "conclusory" with respect to the underlying factual bases of, opinions regarding the applicable standard of care, the manner in which Wall's care had failed to meet that standard, and how that breach had proximately caused Smith's alleged injuries.[4] Wall moved to dismiss Smith's health suit with prejudice and for attorney's fees,

---

[1] Smith also sought recovery based on a theory that Dr. Wall negligently failed to refer him to an oral surgeon. Smith does not challenge the district court's judgment to the extent it dismisses this component of his health care liability claim.

[2] *See* Tex. Civ. Prac. & Rem. Code § 74.001(a)(12)(A)(ii) (including dentist in MLA's definition of "health care provider").

[3] Under the version of the MLA applicable to this case, Smith was required to comply with the expert-report requirement "not later than the 120th day after the date the original petition was filed." *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, sec. 74.351(a), 2003 Tex. Gen. Laws 847, 875, *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, sec. 74.351(a), 2005 Tex. Gen. Laws 1590, 1590 (current version at Tex. Civ. Prac. & Rem. Code § 74.351(a)). However, in the absence of other material intervening substantive changes, we have cited the current version of the MLA for convenience.

[4] *See* Tex. Civ. Prac. & Rem. Code § 74.351(a) ("Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived.").

and set the motion for hearing on a date after the expiration of the 120-day period in which Smith was required to serve his expert report.[5] Smith responded by serving Wall with an amended report while still within the 120-day period. Wall timely objected to the amended report, again contending that it also was deficient under the MLA, and moved to dismiss Smith's suit after the 120-day period had expired. In response, Smith disputed the merits of Wall's objections and, in the alternative, requested a 30-day extension to cure any deficiencies that the court found with the amended expert report.[6]

Following a hearing at which the parties presented only argument, the district court expressly held that Bates's report (both the amended version and the original) was "inadequate in that it fails to establish (1) standard of care, (2) a breach of that standard of care, and (3) a causal link between the breach and [Smith's] injuries." The court further denied Smith's alternative extension request and dismissed the suit with prejudice. Subsequently, the district court awarded Wall approximately $9,000 in attorney's fees and costs of court. Smith timely perfected this appeal.

---

[5] *See id.* § 74.351(b) (providing that if "an expert report has not been served" within the 120-day period, the court shall, on the health care provider's motion, award reasonable attorney's fees and costs of court to the provider and dismiss the claim with respect to the provider with prejudice); *Ogletree v. Matthews*, 262 S.W.3d 316, 319-21 & n.2 (Tex. 2007) (explaining that claimant may fail to "serve" an "expert report" within the 120-day period not only by failing to serve any document purporting to be one, but also by timely serving an "expert report" whose contents fail to satisfy the MLA fully); *see also Scoresby v. Santillan*, 346 S.W.3d 546, 555-57 (Tex. 2011) (addressing distinction between deficient "expert reports" and documents that cannot be considered "expert reports" at all).

[6] *See* Tex. Civ. Prac. & Rem. Code § 74.351(c) (providing that if "an expert report has not been served" within the 120-day period "because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency").

**ANALYSIS**

Smith challenges the district court's judgment through two issues, urging that the court abused its discretion (1) in concluding that Bates's amended report did not represent an objective good faith effort to comply with the statutory definition of an expert report; and, alternatively, (2) in denying him a 30-day extension to cure any deficiency.

**Standard of review**

The MLA defines an "expert report" as "a fair summary of the expert's opinion as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed."[7] "A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply" with this definition of "expert report."[8] To constitute a "good faith effort," as the Texas Supreme Court has explained, the report must include the expert's opinion on "each of the three main elements: standard of care, breach, and causation," and must provide enough information to fulfill two purposes with respect to each element: (1) it must inform the defendant of the specific conduct the plaintiff has called into question; and (2) it must provide a basis for the trial court to conclude that the claims have

---

[7] *See id.* § 74.351(r)(6). The MLA also prescribes the qualifications of the "expert" who may prepare an "expert report," *see id.* § 74.351(r)(5), but Wall has not disputed that Bates met those standards here.

[8] *Id*. § 74.351(*l*).

4

merit.[9] The only information relevant to determining whether an expert report complies with these requirements is that contained within "the four corners" of the report itself.[10]

We review the trial court's determination regarding the adequacy of an expert report for an abuse of discretion.[11] Generally stated, a trial court "abuses its discretion" when it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles.[12] Within this overarching inquiry, we defer to any factual determinations to the extent they are supported by evidence,[13] and thus it is said that a trial court "abuses its discretion" in this regard if it "could reasonably have reached only one decision."[14] However, because a trial court has no "discretion" in interpreting or applying the law,[15] we review de novo any legal determinations by the district court—such as its construction and application of the MLA.[16]

---

[9] *See Jelinek v. Casas*, 328 S.W.3d 526, 538-40 & n.9 (Tex. 2010); *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam); *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878-79 (Tex. 2001).

[10] *Palacios*, 46 S.W.3d at 878; *Hebert v. Hopkins*, 395 S.W.3d 884, 890 (Tex. App.—Austin 2013, no pet.).

[11] *See Wright*, 79 S.W.3d at 52 (citing *Palacios*, 46 S.W.3d at 878).

[12] *See id*. (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)).

[13] *See Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011).

[14] *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding).

[15] *Id*. at 840.

[16] *Stockton*, 336 S.W.3d at 615.

**Standard of care**

A health care liability claim based on the alleged failure to obtain informed consent is governed by section 74.101 of the Civil Practice and Remedies Code:

> In a suit against a physician or health care provider involving a health care liability claim that is based on the failure of the physician or health care provider to disclose or adequately disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or health care provider, the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent.[17]

The Legislature has charged the Texas Medical Disclosure Panel with the responsibility "to determine which . . . treatments and procedures do and do not require disclosure of the risks and hazards . . . ."[18]  The Texas Supreme Court has explained that "[t]he Panel's lengthy lists of procedures for which disclosure either must or need not be made, and of the risks that must be disclosed, largely define the scope of the statutory duty to disclose and inform the scope of the common-law duty."[19]  Because the Texas Medical Disclosure Panel has not specifically determined what risks or hazards must be disclosed prior to wisdom-tooth extraction, the parameters of the informed-consent duty defaults to a general duty to disclose the risks or hazards that could have

---

[17]  Tex. Civ. Prac. & Rem. Code § 74.101.

[18]  *Id*. § 74.103(a).

[19]  *Felton v. Lovett*, 388 S.W.3d 656, 662 & n.33 (Tex. 2012) (citing 25 Tex. Admin. Code §§ 601.1-.3 (2014) (Tex. Med. Disclosure Panel)).

influenced a reasonable person in making a decision to give or withhold consent.[20] To establish the existence of this duty, "the plaintiff must introduce evidence to show the risk is [(1)] inherent to the medical procedure undertaken," and "[(2)] material in the sense that it could influence a reasonable person's decision to consent to the procedure."[21] Inherent risks are those that exist in and are inseparable from the procedure itself.[22]

Throughout these proceedings, Wall has insisted that any opinions of Bates regarding this standard of care are merely "conclusory," i.e., lacking in any underlying factual basis. The district court, as previously indicated, evidently agreed. In so ruling, Smith urges, the district court abused its discretion. We are compelled to agree with Smith.

Bates opined:

> Because injury to the lingual nerve is a known risk and potential complication of the surgical procedure, the standard of care requires that the risk be discussed with the patient by the doctor prior to performing the surgery, in order to obtain informed consent.[23]

---

[20] *See* Tex. Civ. Prac. & Rem. Code §§ 74.101, .106(b); *Barclay v. Campbell*, 704 S.W.2d 8, 9 (Tex. 1986); *Baylor Univ. Med. Ctr. v. Biggs*, 237 S.W.3d 909, 914 & n.3 (Tex. App.—Dallas 2007, pet. denied).

[21] *Barclay*, 704 S.W.2d at 9-10.

[22] *Felton*, 388 S.W.3d at 661-62 (describing inherent risks of treatment as "those which are directly related to the treatment and occur without negligence"); *Barclay*, 704 S.W.2d at 10.

[23] All of our references are to Bates's amended report, which, as previously noted, was served within the 120-day period. *See Constancio v. Bray*, 266 S.W.3d 149, 160-61 (Tex. App.—Austin 2008, no pet.) ("A plaintiff has, by statute, 120 days . . . in which to get a complying report served even if the plaintiff has already served one or more non-complying reports.").

7

In support of this opinion, Bates elaborated that "[t]he lingual nerve is a sensory nerve that travels on the medial or tongue side of the lower jaw adjacent to where the wisdom tooth is" and "provides sensation to the side of the tongue, the floor of the mouth and the gum tissue on the tongue side of the lower jaw up to the midline."[24] He further explained that the lingual nerve "is at risk of injury both from the injection of local anesthetic to provide numbness to this area, as well as direct injury from drills or other sharp instruments used to remove a wisdom tooth." And in the case of Smith's "particular wisdom tooth," Bates added, "removal . . . was made especially difficult because the tooth was severely decayed, the tooth was very far back in the lower jaw making it more difficult to reach, and may have been partially impacted, or buried partly under soft tissue or bone." "Because of the foregoing," Bates further observed, "nerve injuries are a known risk and potential complication of mandibular wisdom tooth extraction," and that he had "seen in [his] practice, many patients with lingual nerve injury following removal of lower wisdom teeth."[25]

Drawing on these observations, Bates opined that "[l]ingual nerve injury is an inherent risk of the procedure Mr. Smith underwent." "Given the nature of the procedure," he added, "the risk of the injury occurring cannot be eliminated [and] is always there, even if the procedure is performed in accordance with the standard of care." He continued that "[l]ingual nerve injury is a material risk of the procedure and well-known to all those who remove wisdom teeth on a regular

---

[24] Bates added that the lingual nerve is "a branch of the fifth cranial (trigeminal) nerve, which travels through the soft tissues along the tongue side of the lower jaw [and] provides sensation to the top, side, and underside of the tongue, as well as the floor of the mouth and the soft tissues on the lingual, or tongue side, of the lower jaw, as well as taste sensation."

[25] In fact, Bates acknowledged, such injuries "ha[d] occurred in [his] own hands before as well."

basis." Bates further asserted that disclosure of the inherent risk of lingual nerve injury "could have influenced a reasonable person to decide whether to give or withhold his consent."

Bates's report is hardly ambiguous or equivocal regarding this standard of care or the reasons why Bates contends it applies—the lingual nerve is located in an area of the mouth at risk of injury during wisdom-tooth extraction, that risk cannot be eliminated "even if the procedure is performed in accordance with the standard of care," and the existence of this risk could influence a reasonable person's decision whether to consent to the procedure.[26] Further, in regard to standard of care, Bates's report specifically informs Wall of the conduct Bates has called into question and supplies the district court with a basis for it to conclude that Smith's health care liability claim has merit. Accordingly, Bates's report represents, as a matter of law, an "objective good faith effort" to comply with the MLA's "expert report" definition with respect to the applicable standard of care.

**Breach**

As with standard of care, Wall has argued that Bates's report is "conclusory" as to breach. Wall suggests that the following opinion by Bates was the expert's sole assertion relevant to that element:

> The failure of Dr. Wall to discuss with the patient prior to surgery the risks and potential complications of the surgical procedure, and his failure to obtain informed consent, falls below the standard of care in this particular case.

---

[26] *Cf. Hebert*, 395 S.W.3d at 892-95 (example of case where expert's underlying factual predicates for his opinions regarding applicable standard of care were ambiguous).

9

The district court evidently was persuaded by Wall's characterization of Bates's report, quoting the above statement and labeling it "a conclusory statement without any factual basis for concluding such in the report." On appeal, Smith urges that Bates *did* supply sufficient underlying factual bases regarding breach and that the district court abused its discretion in ruling otherwise. Again, we are compelled to agree with Smith.

With reference to Smith's medical records, Bates observed:

> The records reflect that [Smith] returned to see Dr. Wall on 2/3/2012 and underwent surgical extraction of the mandibular left third molar under local anesthesia. A signed consent form dated this date discusses nerve damage and describes numbness of the lips, gums or teeth but makes no mention of numbness of the tongue or floor of mouth. The clinical note documented on this date makes no mention of a discussion of risks or potential complications of the surgical procedure between the doctor and the patient.

In short, Bates unambiguously explained that Wall failed to inform Smith of the risk that the wisdom-tooth-extraction procedure could cause injury including numbness in his tongue and the floor of his mouth. As a matter of law, this suffices as an "objective good faith effort" to comply with the MLA's "expert report" definition with respect to breach of Wall's asserted duty to disclose the aforementioned risk to Smith.

**Causation**

The element of causation in an informed-consent case has two components: (1) a reasonable person would have refused the treatment or procedure had he been fully informed of the inherent risks which would influence his decision;[27] and (2) the injury complained of was caused in

---

[27] *See McKinley v. Stripling*, 763 S.W.2d 407, 410 (Tex. 1989).

fact by the undisclosed risk.**28**   Wall has not objected to or otherwise disputed Bates's report with regard to the first component.  As for the second, Wall has insisted, as with the other elements, that any opinions of Bates regarding cause-in-fact are merely "conclusory."**29**  The district court evidently agreed, and Smith assails this as an abuse of discretion.  We again must agree with Smith.

Bates opined:

> Jeffrey Smith's lingual nerve injury was caused, in fact, by a retromolar laceration caused by the slippage of the East/West elevators, which was an inherent risk Dr. Wall failed to disclose to [Smith] before the procedure.

In support, Bates quotes a portion of Wall's "operative note," which, according to Bates, indicated that the "[e]ast/west forcep slipped and caused the laceration on retro molar tissue" during the procedure, "followed by the placement of sutures and control of hemostasis."  During the days following the operation, Bates continued, medical records documented a conversation between Wall and Smith in which "'[Smith] state[d] his tongue is still numb.'"  Further, according to Bates, Wall's notes reflected his diagnosis of Smith with an "unobserved nerve injury to the lingual nerve."  Thereafter, Bates explained, the medical records indicate that Wall referred Smith to another doctor

---

**28** *Biggs*, 237 S.W.3d at 922 (citing *Greene v. Thiet*, 846 S.W.2d 26, 31 (Tex. App.—San Antonio 1992, writ denied)).

**29** Wall also emphasizes Bates's opinion that lingual nerve injury is an inherent risk of extraction that "cannot be eliminated" "even if the procedure is performed in accordance with the standard of care."  While perhaps relevant to causation under a theory of negligence in performing the procedure, the opinion instead goes to duty under Smith's informed-consent claim. *See Barclay*, 704 S.W.2d at 9-10 (explaining that claimant "must introduce evidence to show the risk is inherent to the medical procedure undertaken" to support an informed-consent claim); *see also Felton*, 388 S.W.3d at 663 ("Whether [a health care provider] was negligent in his treatment . . . is a distinct legal question from whether [he] was negligent in failing to disclose the risks of treatment . . . .").

who "diagnosed a left lingual nerve injury with profound numbness in the left tongue extending to the midline."

In short, Bates's amended report unambiguously explained the basis of his conclusion that Smith's injury was caused by damage to the lingual nerve—a risk of the procedure that Bates had faulted Wall for failing to disclose beforehand—and linked that opinion to the facts of this case. As a matter of law, Bates's opinion regarding causation represented an objective good faith effort to comply with the statutory definition of an expert report.

We sustain Smith's first issue.

## CONCLUSION

Having sustained Smith's first issue, we need not reach his alternative second issue urging that the district court abused its discretion in declining to grant him a 30-day extension before dismissing his suit.[30] We reverse the district court's judgment and remand for further proceedings.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Field

Reversed and Remanded

Filed: June 18, 2014

_____

[30] *See* Tex. R. App. P. 47.1.

12