Jennifer HIGHTOWER, individually and as Representative of the Estate of Joshua Hightower, and Dale Hightower, Appellants,

v.

BAYLOR UNIVERSITY MEDICAL CENTER, Dr. Edmund Sanchez, and Dr. Srinath Chinnakotla, Appellees.

No. 05–10–00300–CV.

Court of Appeals of Texas, Dallas.

Aug. 12, 2011.

Robert Daniel O'Conor, Cotham, Harwell & Evans, Houston, Matthew Robert Patton, Gilmer, for Appellants.

Cory M. Sutker, Michelle E. Robberson, John A. Scully, Cooper & Scully, P.C., D. Bowen Berry, Deborah B. Junek, The Berry Firm, P.L.L.C., Stan Thiebaud, Ty Bailey, Michael A. Yanof, Stinnett, Thiebaud & Remington, L.L.P., Dallas, for Appellees.

Before Justices O'NEILL, MURPHY, and FILLMORE.

## OPINION

Opinion By Justice O'NEILL.

Jennifer and Dale Hightower appeal from the trial court's orders dismissing their case for failure to file an adequate expert report. In two issues, the Hightowers contend: (1) the trial court erred in dismissing their case because the expert reports complied with the law; and (2) the expert report requirements violate the Texas Constitution. We overrule the Hightowers' issues and affirm the trial court's interlocutory orders.

## Background

The Hightowers' son, Joshua, suffered from chronic kidney disease and needed a transplant. He received a transplant on May 4, 2004. Dr. Srinath Chinnakotla harvested the transplanted kidney from a deceased donor in a Texarkana hospital. Dr. Edmund Sanchez performed the transplant surgery at Baylor University Medical Center. Soon after the surgery, Joshua began to experience complications. Joshua died on June 21, 2004. An autopsy revealed that he died of complications from rabies acquired from the infected kidney.

The Hightowers filed a health care liability claim against Baylor, Dr. Chinnakotla, and Dr. Sanchez (collectively "appellees") seeking damages for the wrongful death of their son. In their third amended petition, the Hightowers alleged claims for negligence, fraud and intentional misrepresentation, and gross negligence. Pursuant to the requirements of chapter 74 of the Texas Civil Practices and Remedies Code, the Hightowers filed two expert reports from Dr. Youmin Wu and Dr. Ted Eastlund. Appellees objected to the reports as deficient and moved to dismiss. The trial court apparently delayed ruling on the motions to await this Court's decision in *Baylor University Medical Center v. Biggs*, 237 S.W.3d 909 (Tex.App.-Dallas 2007, pet. denied). The plaintiff in *Biggs* had received the other kidney from the same donor and, like Joshua, died from complications of rabies. Like this case, *Biggs* involved an appeal regarding the sufficiency of expert reports.

Following this Court's issuance of the *Biggs* opinion, the trial court found the expert reports of Dr. Wu and Dr. Eastlund were deficient. The trial court allowed the Hightowers an extension of time to file sufficient reports. The Hightowers filed supplemental reports of both Dr. Wu and Dr. Eastlund. Appellees objected to these reports and filed motions to dismiss. Following a hearing, the trial court found the supplemental reports deficient and granted appellees' motions to dismiss. The trial court also awarded attorney's fees and costs to appellees in an amount to be determined at a later date. This appeal timely followed.

## Expert Reports

In their first issue, the Hightowers contend the trial court erred in finding their expert reports deficient. Specifically, the Hightowers contend their two expert reports met the statutory requirements.

■ A plaintiff who files a health care liability claim must file an expert report within 120 days of filing suit. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (West Supp. 2010). An expert report must provide the expert's opinion as to the applicable standard of care and how the care provided failed to meet that standard and explain the causal relationship between that failure and the claimed injury. § 74.351(r)(6). An expert report must provide enough information to fulfill two purposes. *Am. Transitional Care Ctrs. of Texas, Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex.2001). The report must inform the defendant of the specific conduct the plaintiff has called into question, and the report must provide a basis for the trial court to conclude the claims have merit. *Id.* A trial court must grant a motion challenging the expert report if it determines the report does not represent an objective good faith effort to comply with the definition of an expert report. § 74.351(*l*).

■ Whether the report complies with the requirements of section 74.351(r)(6) is determined by examining the four corners of the report. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex.2002). The report need not marshal

all the plaintiff's proof, but it must include a fair summary of the expert's opinions on each of the three elements required by the statute. *Id.* The report cannot merely state the expert's conclusions, but must explain the basis of the expert's statement to link the conclusions to the facts. *Id.*

■ We review the trial court's determination regarding the adequacy of an expert report for an abuse of discretion. *Palacios,* 46 S.W.3d at 877; *Standefer v. Brewer,* 256 S.W.3d 889, 891 (Tex.App.-Dallas 2008, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *See Garcia v. Martinez,* 988 S.W.2d 219, 222 (Tex.1999). When reviewing matters submitted to the trial court's discretion, we may not substitute our own judgment for that of the trial court. *Harris Cnty. Hosp. Dist. v. Garrett,* 232 S.W.3d 170, 176 (Tex.App.-Houston [1st Dist.] 2007, no pet.). A trial court does not abuse its discretion merely because it decides a discretionary matter differently than we would in a similar circumstance. *Id.*

■ In this case, we focus our attention on the causal link between the alleged failure to meet the standard of care and the claimed injury. *See McKinley v. Stripling,* 763 S.W.2d 407, 410 (Tex.1989) (proximate cause remains an element of action based on doctor's failure to inform patient of inherent risks associated with surgical procedure). As this Court previously has held, a plaintiff must establish that the "injury complained of was caused in fact by the undisclosed risk." *Biggs,* 237 S.W.3d at 922 (citing *Greene v. Thiet,* 846 S.W.2d 26, 31 (Tex.App.-San Antonio 1992, writ denied)). The Hightowers have

given us no legal basis to revisit this holding, and we decline to do so.

■ As this Court noted in *Biggs,* the Texas Medical Disclosure Panel has not determined what risks or hazards must be disclosed prior to kidney transplant surgery. *Biggs,* 237 S.W.3d at 914. In this circumstance, the physician "is under the duty otherwise imposed by law." Tex. Civ. Prac. & Rem.Code Ann. § 74.106(b) (West 2005). For such a procedure, the physician's duty is to disclose all risks or hazards that could influence a reasonable person in making a decision to consent to the procedure. Tex. Civ. Prac. & Rem.Code Ann. § 74.101 (West 2005). Expert testimony must establish that a risk is "inherent" to the treatment or procedure in question. *Id.* In order to be an inherent risk, it must exist in connection with and be inseparable from the procedure. *Barclay v. Campbell,* 704 S.W.2d 8, 10 (Tex. 1986). In *Barclay* for example, the defendant psychiatrist gave the plaintiff a psychiatric medication without disclosing the risk that it can cause a serious muscle disorder. *Id.* at 9. To establish the inherent risk of the medication, the plaintiff introduced expert testimony regarding the probability of contracting the muscle disorder as a result of taking the medication. *Id.* at 10.

Here, Dr. Eastlund states in his report addressing only Dr. Sanchez's care that the donor was at a high risk for HIV and hepatitis because of drug use and recent incarceration. He bases this opinion on the guidelines set by the Centers for Disease Control, which provide for the exclusion of certain persons from organ donation due to their increased risk of HIV and hepatitis infection. Drug use[1] and recent

---

1. As for drug use, the CDC guidelines provide for excluding persons "who report non-medical intravenous, intramuscular, or subcutaneous injection of drugs in the preceding five years." The CDC guidelines do not exclude all illicit drug users from organ donation.

incarceration are among the criteria. Dr. Eastlund states "It is my opinion as a practitioner that a reasonable patient under the same circumstances as those faced by Joshua Hightower would have rejected [the donor's] kidney donation and surgery and the rabies infection would have been avoided." However, the risk that a reasonable patient would have considered is that the donor was at high risk for hepatitis and HIV, not that the donor exhibited signs of rabies. Although Dr. Eastlund states in his report that the donor exhibited hypersalivation, a classic sign of rabies, when he was first seen in the emergency room and he developed a high fever, Dr. Eastlund does not state or suggest this information was known to Dr. Sanchez at the time any duty of disclosure arose. He in fact states that the doctors at the Texarkana hospital attributed these symptoms to the donor's cocaine overdose. He also recognizes it was "[o]nly after fatal rabies developed in the organ transplant recipients was it discovered from friends of the organ donor that the organ donor had been bitten by a bat sometime prior to hospitalization."

Dr. Eastlund fails to discuss the inherent risks of a kidney transplant. His conclusion that the donor's kidney should not have been offered is tied to the CDC guidelines that focus solely upon an increased risk of infection for HIV and hepatitis. Although Dr. Eastlund notes the donor's hypersalivation, he does not state the kidney should have been excluded because of that symptom. Instead, Dr. Eastlund contends that Dr. Sanchez breached his standard of care by failing to inform the Hightowers and Joshua of the donor's high risk status for having either HIV or hepatitis. Even if true, the undisputed fact remains that the injury complained of, acquiring rabies from the donor, was not caused by the undisclosed risk of HIV or hepatitis. Accordingly, Dr. Eastlund's report fails to establish the causal link between the alleged failure to meet the standard of care and the claimed injury.

■ We turn now to Dr. Wu's report. Dr. Wu addresses all three appellees in his report. Dr. Wu stated in his report that the donor had evidence of rhabdomyolysis, a condition that frequently results in kidney damage. He opined that the donor was a poor kidney donor except for the critically ill for two reasons: (1) the donor showed signs of rhabdomyolysis and (2) the donor was in a high risk category for HIV and hepatitis. With regard to the donor's high risk status, Dr. Wu, like Dr. Eastlund, relied upon the criteria set forth in the CDC guidelines. Dr. Wu further opined that once the decision was made to accept the organ for transplant, Dr. Sanchez should have informed Joshua and his parents of the high risk and obtained their consent. Dr. Wu opined that the appellees fell below the standard of care by offering the kidney to Joshua in the first place and also by failing to obtain the family's informed consent. However, Dr. Wu fails to connect any of the donor's symptoms or possible conditions to Joshua's cause of death. Joshua died of complications from rabies. Neither rhabdomyolysis, HIV infection, nor hepatitis caused Joshua's death. For this reason, Dr. Wu's report also fails to establish the necessary causal link between the alleged failure to meet the standard of care and the claimed injury.

■ The Hightowers contend they were not informed of an infection risk and

---

The record in this case indicates that the donor *ingested* rock cocaine. There is no indication in this record that the donor injected non-medical drugs intravenously, intramuscularly, or subcutaneously within five years preceding his death.

that it is irrelevant that an infection other than the one anticipated led to Joshua's death. We disagree. The Hightowers' pleadings and the expert reports tied the donor's infection risk to HIV and hepatitis. Moreover, at oral argument, counsel for the Hightowers agreed that the donor's high risk status is tied to the CDC guidelines. Those guidelines deal exclusively with the risks of acquiring HIV and hepatitis. Even assuming there is a duty to disclose a donor's high risk status as an inherent risk, the injury still must be related to the undisclosed risk. *See Biggs*, 237 S.W.3d at 922. Joshua's death was not related to the donor's alleged high risk status. That relationship is absent in this case. Neither Dr. Wu nor Dr. Eastlund suggests in his report that there is a connection between the donor's alleged high risk status and the rabies virus. They do not assert that a person who uses illegal drugs or has been in jail is at a greater risk of a rabies infection. They do not opine that acquiring an infection other than HIV or hepatitis is an inherent risk in a kidney transplant surgery with an organ from a high risk donor. Joshua was injured by rabies, a condition of the donor that no one was aware of at the time of the surgery.

The Hightowers' attempt to distinguish *Biggs* and thereby avoid its causation analysis, on the ground that, unlike the plaintiffs in *Biggs*, they also asserted a claim for unnecessary surgery. The Hightowers contend this claim was raised in their third amended petition. At oral argument, counsel for the Hightowers directed us to paragraph thirty-five of that petition. That paragraph is under the heading "Defendants' Negligence" and states in its entirety as follows:

> Baylor University Medical Center, Dr. Edmund Sanchez, Dr. Srinath Chinnakotla, and Southwest Transplant Alliance ("Defendants") fell below the standard of care by permitting Josh to receive a kidney from a high risk donor. At the time of the transplant, Josh's kidney failure was well-controlled by dialysis. He should not have been a candidate for surgery from Beed, a donor who was at high risk for infection.

Assuming, without deciding, that the Hightowers raised an unnecessary surgery claim, their argument fails. An unnecessary surgery claim seeks to impose liability for negligence in making an erroneous diagnosis or prognosis. *Binur v. Jacobo*, 135 S.W.3d 646, 655 (Tex.2004). As the Court stated in *Binur*, "[i]t is a diagnosis or prognosis that may be actionable negligence, but it cannot form the basis for a finding that Binur failed to obtain informed consent from [the plaintiff]." *Id.* at 657. We do not dispute the Hightowers' claim that it is permissible to have both an unnecessary surgery claim and a failure to obtain an informed consent claim. The facts alleged, however, do not support a cause of action for unnecessary surgery.

The Hightowers rely on *Vaughan v. Nielson*, 274 S.W.3d 732 (Tex.App.-San Antonio 2008, no pet.) as support for their unnecessary surgery claim. The doctor told Vaughan that the success rate for a surgery was ninety percent and that only fifty percent of patients suffer a side effect of compensatory sweating, which most describe as a minor inconvenience. Following the surgery, Vaughan suffered from severe compensatory sweating. *Id.* at 735. Vaughan presented expert testimony that the surgery had only a thirty-three percent success rate and that eighty to one-hundred percent will experience compensatory sweating. The unnecessary surgery claim in *Vaughan* was based on the fact that the surgery performed is rarely,

if ever, for the treatment of Vaughan's condition. *Id.* at 742. Vaughan claimed the doctor failed to properly diagnose his condition and performed an unnecessary surgery as a result. Moreover, the patient acquired the serious side effect, the likelihood of which had been misrepresented to him. By contrast, this case does not involve a misdiagnosis or any misrepresentations regarding side effects.

Unnecessary surgery claims concern misdiagnoses of the patients or misrepresentations in prognoses given to patients. They involve the condition of the patient that the doctor should have been aware of and that made the surgery unnecessary. *See Foster v. Zavala,* 214 S.W.3d 106 (Tex.App.-Eastland 2006, pet. denied) (if patient had not had surgery resulting from misdiagnosis, toe amputations would have been avoided); *Strom v. Mem'l Hermann Hosp. Sys.,* 110 S.W.3d 216 (Tex. App.-Houston [1st Dist.] 2003, pet. denied) (no justification for total knee replacement surgery); *Horsley–Layman v. Angeles,* 90 S.W.3d 926 (Tex.App.-Fort Worth 2002, pet. denied) (surgery to remove gallbladder without any verifiable abnormality of gallbladder). Here, the Hightowers pleaded that the surgery was unnecessary because of the high risk status of the donor. The focal point of this case is the condition of the organ donor. Joshua acquired a condition from the donor, rabies, that was unknown at the time of the surgery.

In these unnecessary surgery cases, the patient did not need the surgery. No one is saying Joshua did not need the kidney transplant. The Hightowers merely contend that the surgery to address Joshua's end-stage renal failure could have been delayed because Joshua's kidney disease was well controlled with dialysis. Even if Joshua could have waited for a kidney from another donor, that does not render his surgery unnecessary.

We conclude the expert reports failed to establish a causal link between the alleged failure to meet the standard of care and the claimed injury. Accordingly, we overrule the Hightowers' first issue.

### Constitutionality of Section 74.351

In their second issue, the Hightowers contend section 74.351 is unconstitutional. Specifically, they argue that it violates the Texas Constitution because: (1) it is an unconstitutional special law; (2) it is unconstitutionally vague; and (3) the requirement of mandatory sanctions violates both due course of law principles and separation of powers. This Court presumes that a statute is constitutional. *Walker v. Gutierrez,* 111 S.W.3d 56, 66 (Tex.2003). In challenging the constitutionality of a statute, a party may show that the statute is unconstitutional on its face or as applied to that party. *Texas Workers' Comp. Comm'n v. Garcia,* 893 S.W.2d 504, 518 n. 16 (Tex.1995). To sustain a facial challenge, the party must show that the statute, by its terms, always operates unconstitutionally. *Id.* To sustain an as-applied challenge, the party must show that the statute is unconstitutional when applied to that particular person or set of facts. *Id.*

Under the Texas Constitution, the legislature may not pass any special law "regulating the practice or jurisdiction of, or changing the rules of evidence in any judicial proceeding or inquiry before courts...." Tex. Const. Art. III, § 56(a)(16). The Hightowers contend the expert report requirement treats plaintiffs alleging medical malpractice claims differently from plaintiffs alleging other tort claims. They also contend this report requirement provides protections to medical malpractice defendants not enjoyed by other tort defendants.

Another Texas appellate court addressed this same argument in *Smalling v. Gardner*, 203 S.W.3d 354 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). In rejecting the argument, the court in *Smalling* recognized that the legislature has broad authority to create classifications for legislative purposes as long as they have a reasonable basis and operate equally on all persons within the class. *Id.* at 371. The court noted that the expert report is required only for claims against healthcare providers for departures from accepted standards of medical or health care or safety. *Id.* Accordingly, the expert report requirement applies equally to all health care providers and rationally relates to the interest of the State to prevent medical practitioners from defending frivolous claims at a high cost to the health care system. *Id; see also McGlothlin v. Cullington*, 989 S.W.2d 449, 453 (Tex.App.-Austin 1999, pet. denied). We agree the court in *Smalling* applied the correct analysis and adopt its holding.

■■■■■ The Hightowers' second constitutional argument is that TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) is unconstitutionally vague. Under that challenge, a statute is constitutional if an ordinary person exercising ordinary common sense can understand and comply with it. *Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 437 (Tex.1998). Section 74.351 sets forth the requirement that a plaintiff file an expert report for each physician or health care provider against whom a liability claim is asserted and the date by which the report must be served. Additionally, the statute prescribes what information the expert's report must contain. The statute details the right of a physician or health care provider to seek dismissal if the claimant fails to file the report or files a deficient report. It further provides that a trial court must grant a motion to dismiss based on the adequacy of an expert report if the report does not represent an objective good faith effort to comply with the expert report requirement as defined in subsection 74.351(r)(6). The statute sets forth in ordinary terms the expert report requirement and the consequences for failing to comply. We hold that the statute is not unconstitutionally vague.

Finally the Hightowers contend subsection 74.351(b)(1), which requires the trial court to award reasonable attorney fees and court costs, violates both the separation of powers between the courts and the legislature and also the due course of law provision of the Texas Constitution. Subsection 74.351(b) requires the award of reasonable attorney's fees and court costs incurred by a physician who is not served with a timely expert report.

■■■■ We initially address a point made in the Hightowers' reply brief. They suggest that they may have been mistaken about attorney's fees. Citing a supreme court case, they contend that the automatic attorney's fees sanction comes into play only when *no* expert report has been filed. *See Aviles v. Aguirre*, 292 S.W.3d 648 (Tex.2009) (per curiam). The plaintiffs in *Aviles* did not file an expert report because they contended they were not asserting a health care claim. *Id.* at 648–49. The Court did not address the Hightowers' contention. In another case, however, the supreme court did address the issue and held that a timely but deficient report is one that "has not been served." *Lewis v. Funderburk*, 253 S.W.3d 204, 207–08 (Tex. 2008). The Court noted that subsection 74.351(c) provides that "[i]f an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30–day extension to the claimant in order to cure the defi-

ciency ..." The Court goes on to hold that where a statute uses a term with a particular meaning, we are bound by the statutory usage. *Id.* at 207. "As subpart (c) defines a timely but deficient report as one that 'has not been served,' the same meaning must be given the same phrase in subpart (b)." *Id.* at 207–08. Thus the automatic attorney's fees sanction comes into play when a timely but deficient expert report has been filed.

■ Returning to the Hightowers' constitutional argument, the Texas Constitution vests the judicial power of the State in the courts. TEX. CONST. Art. V, § 1. The separation-of-powers doctrine prohibits one branch of government from exercising a power inherently belonging to another branch. TEX. CONST. Art. II, § 1; *Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 600 (Tex.2001). Only when the executive or legislative branch interferes with the functioning of the judicial process in a field constitutionally committed to the courts does a constitutional problem arise. *Id.* Although the statute does mandate the imposition of attorney's fees and costs if the court, in its discretion, finds that no report has been filed, the court still retains its constitutional authority to determine the reasonable fees based on the law and the evidence presented by the parties. Thus the statute does not violate the separation of powers provision of the Texas Constitution.

■ The Texas Constitution provides the following open courts guarantee: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." TEX. CONST. art. I, § 19. The open courts provision "guarantees all litigants the right to redress their grievances ... the right to their day in court." *Odak v. Arlington Mem'l Hosp. Found.,* 934 S.W.2d 868, 871 (Tex.App.-Fort Worth 1996, writ denied) (internal quotation and citation omitted). It is premised upon the rationale that the legislature has no power to make a remedy by due course of law contingent upon an impossible condition. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 355 (Tex.1990). In order to establish an open courts violation, a claimant must show that she has a well-recognized common-law cause of action that is being restricted and that the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute.

■ The Hightowers contend that the legislature has overstepped its role in protecting physicians from frivolous lawsuits. They assert that the decision as to whether and under what circumstances to award monetary sanctions is a judicial function and that requiring monetary sanctions to be levied against a plaintiff who fails to meet the expert report requirement usurps the authority of the court to mitigate any such sanctions by a plaintiff's good faith effort to comply with the statute, denying them open access to the court system. With the expert report requirement, the legislature imposed a threshold to prevent frivolous lawsuits from proceeding until a good-faith effort has been made to demonstrate that at least one expert believes that a breach of the applicable standard of care caused the claimed injury. *See Murphy v. Russell,* 167 S.W.3d 835, 838 (Tex.2005). The courts retain the judicial power to determine whether a timely filed report satisfies the good faith effort requirement. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*), (r)(6). It is only if the trial court determines that a report does not meet the good faith effort requirement that the mandatory attorney's fees are imposed. The trial court still

maintains discretion as to the amount of that award.

We overrule the Hightowers' second issue and affirm the trial court's interlocutory orders.