John H. PELOZA, M.D. and Center for Spine Care, Appellants,

v.

Bright Star CUEVAS, Appellee.

No. 05–10–01388–CV.

Court of Appeals of Texas, Dallas.

Jan. 6, 2012.

Douglas R. Lewis, David M. Walsh IV, Kimberly K. Bocell, Chamblee, Ryan, Kershaw & Anderson, P.C., Dallas, TX, for Appellants.

Harold White, Banner, Briley & White, Wichita Falls, TX, David E. Keltner, Kelly Hart & Hallman LLP, Fort Worth, TX, C. Andrew Weber, Kelly Hart & Hallman LLP, Austin, TX, for Appellee.

Before Justices FITZGERALD, FRANCIS, and LANG–MIERS.

## OPINION

Opinion By Justice LANG–MIERS.

Appellants John H. Peloza, M.D. and Center for Spine Care filed this interlocutory appeal from an order denying their motion to dismiss in a health care liability lawsuit. The issue we address is whether appellee Bright Star Cuevas was required to serve a new expert report to address new allegations in her amended pleading. We conclude that she was required to serve an expert report addressing some but not all of the new allegations. Consequently, we reverse the trial court's order in part and affirm the order in part.

### BACKGROUND

Cuevas, a registered nurse, consulted Peloza for constant cervical spine pain radiating into both arms. Peloza recommended surgical correction. He performed three surgeries on Cuevas between November 1, 2006, and December 20, 2006. Cuevas sued Peloza in December 2008 alleging that he negligently performed the surgeries. She alleged that the first surgery was a failure; the second surgery, which was performed to repair the problem from the first failed surgery, did not repair the problem and was also a failure; and the third surgery, which was performed to repair the damage from the two prior surgeries, was also a failure. Cuevas alleged that she has substantial pain, cannot perform her work as a registered nurse, and cannot perform the usual activities of daily living due to Peloza's negligence:

a) in failing to properly decompress the neural structures located at the C6–7 level of nurse Cuevas'[s] cervical spine during the November 1, 2006 surgery;

b) in failing to properly decompress the neural structures located at the C6–7 level of nurse Cuevas'[s] cervical spine during the November 14, 2006 surgery;

c) in misplacing the bone plug spacer at the C6–7 level of nurse Cuevas'[s] cervical spine during the November 14, 2006 surgery;

d) in failing to timely diagnose the misplaced bone plug spacer which was malpositioned during the November 14, 2006 surgery;

e) in failing to timely remove the malpositioned bone plug spacer misplaced during the November 14, 2006 surgery;

f) in failing to remove the entire malpositioned bone plug spacer during the third surgery on December 20, 2006;

g) in failing to fully decompress the neural structures of nurse Cuevas'[s] cervical spine at the C6–7 level during the third surgery on December 20, 2006;

h) in failing to diagnose compression of the neural structures of nurse Cuevas'[s] cervical spine at the C6–7 level after the third surgery on December 20, 2006;

i) in failing to recommend decompression of nurse Cuevas'[s] cervical spine at the C6–7 level after the third surgery of December 20, 2006; and

j) in failing to inform nurse Cuevas of the remaining bone plug shard in her spinal canal at the C6–7 level after the third surgery of December 20, 2006.

Cuevas served an expert report addressing these allegations. Appellants did not object to the expert report.

After Cuevas had served the original petition and expert report, a "confidential informant" told her that Peloza was suffering from carpal tunnel syndrome in his dominant hand and severe hip problems at the time he operated on Cuevas. Peloza confirmed in his deposition that he suffered from those medical conditions. He testified that the carpal tunnel syndrome had on occasion made his thumb go numb. He refused to answer any other questions related to those medical conditions on the ground of privilege.

More than 120 days after Cuevas filed the original petition, she amended the petition to add allegations that Peloza suffered from carpal tunnel syndrome and a left hip abnormality when he performed the surgeries and that she had not given informed consent for the surgeries because she was not told about his physical conditions. She alleged that the listed acts and omissions in the amended petition, alone or in combination, constituted negligence which proximately caused her injuries and damages. Most of those listed acts and omissions were substantively unchanged from the previous petition, but Cuevas also alleged that Peloza was negligent:

(k) by failing to inform nurse Cuevas that he was experiencing physical incapacities which affected his physical ability to perform successful surgeries; and

(l) by failing to inform nurse Cuevas of his physical inabilities which affected her opportunity to make an informed decision and consent with regard to whether or not to undergo surgeries to be performed by Defendant Peloza.

Cuevas did not serve an expert report to address the new allegations in the amended petition. Instead, she stated that the

"expert report and curriculum vitae previously served upon [appellants] are incorporated herein for all purposes."

Appellants moved to dismiss the new allegations arguing that Cuevas's amended petition "added claims and causes of action related to Dr. Peloza being an impaired physician and specifically alleging that he was negligent in not informing Cuevas of his condition so that she could 'make an informed decision' about using Dr. Peloza as her surgeon." They argued that Cuevas was required to serve an expert report addressing those new allegations and, because she did not, the allegations should be dismissed with prejudice. Cuevas responded stating that the new allegations were more specific allegations about how Peloza was negligent and did not allege new causes of action for health care liability. The trial court denied appellants' motion to dismiss, and this appeal followed.[1]

## STANDARD OF REVIEW

■ We review a trial court's order denying a motion to dismiss a health care liability claim for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex.2002) (per curiam). We apply a de novo standard of review, however, when resolution of the issue requires interpretation of a statute. *See City of Garland v.*

*Dallas Morning News*, 22 S.W.3d 351, 357 (Tex.2000).

## DID AMENDED PETITION ALLEGE NEW HEALTH CARE LIABILITY CAUSES OF ACTION?

Appellants argue that Cuevas's amended petition alleged new causes of action for health care liability for which she was required to serve an expert report.

### A. Allegation Regarding Lack of Informed Consent

Appellants argue that the allegation of lack of informed consent should have been dismissed with prejudice because lack of informed consent is a "different cause of action" for which Cuevas did not serve an expert report. Appellants argue that lack of informed consent is treated "as a separate claim from an ordinary malpractice claim" because it requires different instructions in the jury charge, "causation is completely different for the two causes of action," and "this Court treats ordinary malpractice claims as separate from lack of informed consent claims when it comes to evaluating the sufficiency of an expert report." Citing *Crites v. Collins*, 284 S.W.3d 839, 843 (Tex.2009) (per curiam), appellants further contend that "the statute mandates dismissal with prejudice even if the plaintiff has voluntarily non-suited the claim."

■ Disposition of this case does not require that we determine whether an allegation that a physician failed to fully in-

---

1. A few days after appellants filed their notice of appeal, Cuevas amended her petition again. She omitted the new allegations of failure to inform and lack of informed consent, and she added allegations that Peloza was negligent:

   j) in performing cervical spine surgical procedures while experiencing the effects of carpal tunnel syndrome; [and]

k) in performing cervical spine surgical procedures while experiencing the effects of significant left hip problems[.]

As before, most of the alleged wrongful acts and failures to act remained substantively unchanged.

form a patient of the risks of surgery is a "different cause of action" for health care liability or simply a different theory of negligence. An allegation of lack of informed consent requires an expert report setting forth the standard of care, how the standard of care was breached, and how the injury complained of was caused by the undisclosed risk. *See Hollingsworth v. Springs,* 353 S.W.3d 506, at 522 (Tex.App.-Dallas 2011, no pet.); *Hightower v. Baylor Univ. Med. Ctr.,* 348 S.W.3d 512, 517 (Tex. App.-Dallas 2011, pet. filed); *Tien v. Alappatt,* No. 01–10–00072–CV, 2010 WL 4056850, at *2–*3 (Tex.App.-Houston [1st Dist.] Oct. 14, 2010, pet. denied) (mem. op.) (citing *McKinley v. Stripling,* 763 S.W.2d 407, 409–10 (Tex.1989)).

In this case, Cuevas conceded in her appellate briefing that she did not include the allegation of lack of informed consent when she amended her petition after the hearing on the motion to dismiss. And it is undisputed that she did not serve an expert report addressing that allegation. In oral argument, she stated that she did not "have a problem" with that allegation being dismissed with prejudice.

We conclude, based on the facts of this case and the record, that the trial court abused its discretion by denying appellants' motion to dismiss the allegation of lack of informed consent. *See Hollingsworth,* 2011 WL 3805541, at 522; *Hightower,* 348 S.W.3d at 517; *Tien,* 2010 WL 4056850, at *2–*3. We resolve this subpart of issue one in appellants' favor. We reverse the trial court's order denying the motion to dismiss with respect to the allegation of lack of informed consent and remand to the trial court with instructions to dismiss that allegation with prejudice.

## B. Allegations Regarding Physical Condition of Physician

Appellants argue that the new allegations regarding Peloza's carpal tunnel syndrome and hip condition are "far and away different from an ordinary malpractice claim and more like a lack of informed consent claim so that it should be considered a different cause of action." To support their argument, appellants contend that an allegation of "physician impairment" shifts the focus from the physician's conduct to the physician's physical capabilities and personal life. For example, they argue that the ordinary medical negligence claim is "premised on the physician's thought process or judgment for engaging in certain conduct," whereas a "physician impairment" allegation is premised on "whether [the surgeon] was physically capable of" performing the surgeries correctly.

Appellants also argue that an allegation of "physician impairment" has a different causal connection from an ordinary medical negligence claim. They recognize that a health care claimant must still prove that the physician's conduct caused the claimant's injuries. They argue, however, that the additional step of proving that the "impairment" caused the physician's conduct requires that "impairment should be viewed as a separate cause of action from ordinary malpractice." Finally, appellants contend that an allegation of "physician impairment" is a "different cause of action" because it requires different jury findings from an ordinary medical negligence claim.

Conversely, Cuevas argues that the allegations concerning Peloza's physical conditions help explain why Peloza failed to provide proper care and do not allege a new cause of action. Cuevas contends that the new allegations in her live pleading "help explain one element—breach of the standard of care—in [her] negligence cause of action." For this and other reasons, she contends that Texas law does not

recognize a cause of action for "physician impairment" and that we should not do so here.

### *Discussion*

Two cases from this Court provide guidance on the issue of whether a new expert report was required here to address the new allegations concerning Peloza's physical conditions at the time of the surgeries. In *Methodist Charlton Medical Center v. Steele*, 274 S.W.3d 47, 50 (Tex.App.-Dallas 2008, pet. denied), we concluded that the statute requires a report for each health care liability claim. We also concluded that because the reports did not address the "claims for negligent hiring, supervision, training, and retention, the trial court was required to dismiss [those claims] upon appellants' request." *Id.* And more recently in *Hollingsworth*, we agreed with appellee in that case when she stated "that expert reports are not required to address every action or omission mentioned in the pleading, and that no authority requires reports to 'replicate point-by-point each and every factual allegation in a petition'. . . ." 353 S.W.3d 506, at 522. We also said, "However, an expert's report must address each *theory* of negligence raised by the plaintiff to avoid dismissal of that theory." *Id.* (citing *Windsor v. Maxwell*, 121 S.W.3d 42, 51 (Tex.App.-Fort Worth 2003, pet. denied)). Consequently, we need to determine whether the new allegations regarding Peloza's physical conditions constitute a new cause of action for health care liability or a new theory of negligence.

To make that determination, we look to the Texas Medical Liability Act. It defines a "health care liability claim" as "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care,

. . . which proximately results in injury to or death of a claimant. . . ." Tex. Civ. Prac. & Rem.Code Ann. § 74.001(13) (West 2011). Additionally, "cause of action" has been interpreted to mean "a fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief." *In re Jorden*, 249 S.W.3d 416, 421 (Tex.2008) (orig. proceeding) (internal quotations and citations omitted). And "cause of action" has also been defined as "[a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person." *Id.* (quoting Black's Law Dictionary 235 (8th ed. 2004)).

■ Here, Cuevas alleged that she suffered an injury proximately caused by Peloza's negligence while performing three surgeries on her cervical spine. She alleged that several different acts and failures to act were negligent and also that Peloza's carpal tunnel syndrome and hip condition caused or contributed to those negligent acts or failures to act. Based on these pleadings, we conclude that the new allegations regarding Peloza's physical conditions do not state a new cause of action or a new theory of negligence and do not require a new expert report. We further conclude that the trial court did not abuse its discretion by denying appellants' motion to dismiss the new allegations regarding Peloza's physical conditions.

We resolve this subpart of appellants' first issue against them. Because of our resolution of this issue, we do not need to decide the remaining issues.

### Conclusion

We reverse the trial court's order denying the motion to dismiss the allegation of lack of informed consent and remand to the trial court with instructions to dismiss

that allegation with prejudice. We affirm
the trial court's order in all other respects.