**Reversed and Remanded and Memorandum Opinion filed March 25, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00617-CV

---

**SJ MEDICAL CENTER, LLC, INDIVIDUALLY AND D/B/A ST. JOSEPH MEDICAL CENTER, HOSPITAL PARTNERS OF AMERICA, INC., SJ MEDICAL CENTER MANAGEMENT, LLC, IASIS HEALTHCARE CORPORATION, IASIS HEALTHCARE, LLC, Appellants**

**V.**

**REGINA WALKER, INDIVIDUALLY AND AS SURVIVING SPOUSE AND HEIR OF THADDAUS WALKER, DECEASED AND TRACY WALKER, THADDEUS WALKER, LARRY WALKER, REGINALD WALKER AND TIFFANY BRITTON AS CHILDREN AND HEIRS OF THADDAUS WALKER, DECEASED, Appellees**

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-20429**

---

# M E M O R A N D U M   O P I N I O N

In this health-care liability case, the defendant hospital appeals the denial of its motion to dismiss the claims against it due to the inadequacy of the original and

amended expert reports. We agree that the expert's opinion of the standard of care applicable to the hospital lacks specificity and that his discussion of the hospital's breach of that standard is conclusory. We therefore reverse and remand the case with instructions to the trial court to (a) sever the claims against the hospital from the remainder of the action, (b) assess and award to the hospital its reasonable attorney's fees and costs incurred, and (c) dismiss the claims against it with prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

After a motor-vehicle accident on January 27, 2010, Thaddaus Walker was admitted to St. Joseph Medical Center, LLC d/b/a St. Joseph Medical Center ("SJMC"). According to the reports of the claimants' expert Dr. Brian Camazine, Walker's injuries included an orbital-floor fracture, a broken toe, a large bruise on one thigh, and "pulmonary contusion vs pneumonia with hemoptysis." Walker also had a history of coronary-artery disease, hypertension, diabetes, and obesity. We will focus on Walker's cardiac, pulmonary, and glycemic conditions because in the reports at issue, Dr. Camazine attempted to relate only those conditions or symptoms to the claims against SJMC.

- Cardiac condition. At 3:45 a.m. on January 28, 2010, Walker experienced chest pain that was relieved with nitroglycerin. An EKG performed at 4:00 a.m. showed premature ventricular contractions, but cardiac-enzyme tests performed at the same time did not suggest a myocardial infarction. Walker had a second episode of chest pain at 7:30 a.m., and again, it was relieved with nitroglycerin. Dr. Camazine does not indicate that Walker had any further chest pain, although Walker did have an episode of tachycardia on January 29, 2010.

- Pulmonary condition. Walker experienced sputum production, hemoptysis,

and wheezing at unspecified times during his stay at SJMC. On January 28, 2010, he was reportedly short of breath upon exertion. At noon the next day, he had an oxygen saturation of 88% and was started on albuterol nebulizers for wheezing. When Walker was discharged later that day, he was not complaining of any shortness of breath.

- <u>Glycemic condition</u>. During his two days at SJMC, Walker's glucose level increased from 119 mg/dl upon his admission to a high of 421 mg/dl. At 11:30 a.m. on January 29, 2010, his glucose level was 377 mg/dl, which Dr. Camazine described as being three times the normal level. Walker's physicians started him on an aggressive insulin regimen at noon that day.

Walker was discharged at around 5:00 p.m. on January 29, 2010. During the ride home, he complained of shortness of breath, then stopped breathing. Walker was transported to Memorial Hermann Hospital, where cardiac-enzyme tests "showed an evolving myocardial infarct." Walker died on January 31, 2010. According to Dr. Camazine's expert reports, the autopsy showed acute myocardial infarction, severe coronary-artery disease, and "an undiagnosed squamous cell carcinoma of the right upper lobe"; however, Dr. Camazine did not specifically identify Walker's cause of death.

Walker's wife and children sued SJMC and others,[1] then served the defendants with Dr. Camazine's first expert report. SJMC moved to dismiss the claims against it on the grounds that the expert report was vague and conclusory, and thus, was not a good-faith effort to fulfill the statutory requirements governing expert reports in health-care-liability claims.[2] The trial court denied the motion

---

[1] SJMC is the only defendant that is a party to this appeal.

[2] SJMC also challenged Dr. Camazine's qualifications, but does not reurge that objection on appeal.

3

"for the time being" and gave Walker's survivors a thirty-day extension to amend the expert report to address SJMC's objections. After the amended expert report was served, SJMC again moved to dismiss. The trial court denied the motion.

## II. STANDARD OF REVIEW

When reviewing the trial court's ruling on a challenge to an expert report, we apply the abuse-of-discretion standard. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). A trial court "'abuses its discretion when it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles.'" *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010) (quoting *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam)). When determining whether the trial court abused its discretion, we may not substitute our judgment for that of the trial court. *Wright*, 79 S.W.3d at 52.

## III. ANALYSIS

A claimant under the Texas Medical Liability Act must serve each defendant health-care provider with one or more expert reports and with the curriculum vitae of each expert listed in the report. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West Supp. 2013). The expert report must provide a fair summary of the expert's opinions regarding the applicable standard of care, the manner in which the health-care provider failed to meet that standard, and the causal relationship between that failure and the injury or harm alleged. *Id.* § 74.351(r)(6); *Wright*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 878–79. In setting forth the expert's opinions on each of these three elements, the report must (a) inform the defendant of the specific conduct the plaintiff has called into question, and (b) provide a basis for the trial court to conclude that the claims have merit. *Palacios*, 46 S.W.3d at 879. A report does not fulfill these requirements if it merely states the expert's conclusions about the standard of care, breach, and causation. *Id.* The expert instead "'must explain

4

the basis of his statements to link his conclusions to the facts.'" *Jelinek*, 328 S.W.3d at 539 (quoting *Wright*, 79 S.W.3d at 52).

## A. Dr. Camazine's discussion of the standard of care lacks specificity.

Dr. Camazine opined that under the standard of care applicable to SJMC, the hospital and its nursing staff were required to

> [e]nsure that a patient is not discharged prematurely. The nursing staff, as a result of constant contact with a patient, are in a unique position to know when a patient is stable for discharge. The nurses are usually acutely aware of a patient's cardiac-pulmonary status and a patient[']s glycemic control. Although nursing staff are not in a position to write the orders to discharge a patient, there are means by which the nursing staff can prevent the discharge of a patient if they feel that the patient is not ready for discharge. Such means may be as simple as contacting the attending surgeon and voicing concerns. Other means to prevent a discharge involve contacting a nursing supervisor or even the Chief of Staff of the hospital. By no means are nurses at the mercy of following an order that would put the patient in danger.

We agree with SJMC that Dr. Camazine failed to specify what care SJMC was required to give.

"While a 'fair summary' is something less than a full statement of the applicable standard of care and how it was breached, even a fair summary must set out what care was expected, but not given." *Palacios*, 46 S.W.3d at 880 (quoting *Palacios v. Am. Transitional Care Ctrs. of Tex., Inc.*, 4 S.W.3d 857, 865 (Tex. App.—Houston [1st Dist.] 1999) (Taft, J., dissenting)). Dr. Camazine acknowledged that "nursing staff are not in a position to write the orders to discharge a patient," but paradoxically, he opined that SJMC and its nursing staff nevertheless were required to "[e]nsure that a patient is not discharged prematurely." This presupposes not only that the patient's discharge was premature, but also that SJMC had some way of knowing that the discharge was

5

premature, despite a physician's orders to the contrary. Nevertheless, Dr. Camazine does not identify any actions that SJMC or its staff were required to take to determine whether Walker's physicians' discharge orders were premature, and he does not identify what "concerns" should have been voiced by SJMC's staff in the absence of such a determination.

Walker's survivors argue that this case is like *San Jacinto Methodist Hospital v. McCoy*, No. 14-12-00682-CV, 2013 WL 3009318 (Tex. App.—Houston [14th Dist.] June 13, 2013, no pet.) (mem. op.), in which this court found a standard of care sufficiently specific where the expert opined that the standard required "the operating room nurse to examine the specimen that was removed and verify that is [sic] the entire appendix. If it was not, the operating room nurse needs to bring it to the attention of the surgeon performing the operation." 2013 WL 3009318, at *3. Thus, the expert in that case opined that the nurse had a duty to make an independent determination based on his or her own examination of a specimen. That case is distinguishable because Dr. Camazine does not contend that SJMC's staff had a similar duty to "examine," to "verify," or to perform any act to independently determine whether discharge was appropriate.

The claimants also cite *Bidiwala v. Cockerell*, No. 05-08-01156-CV, 2009 WL 866380 (Tex. App.—Dallas Apr. 1, 2009, no pet.) (mem. op.), stating that the court in that case found the expert's standard of care sufficiently specific where the expert opined that "'[s]tatements made by the patient regarding difficulty breathing should be reported and or charted and brought to the attention of the appropriate physician.'" 2009 WL 866380, at *2. According to the expert in that case, if the defendant—a consulting physician—"'was present when the patient stated that she could not breathe or was having difficultly [sic] breathing, . . . then [the defendant] breached the standard of care by not reporting those statements to the attending

6

physicians and by not taking actions to assure that appropriate interventions were begun.'" *Id.* Contrary to the claimants' characterization of the case, the authoring court did not address the question of whether the stated standard of care was sufficiently specific; it addressed the question of whether the description of the breach was based on improper inferences. *Id.* Moreover, the case is factually distinguishable in that the expert in that case cited evidence that the defendant was present when the patient complained of difficulty breathing but failed to document the complaint or report it to the treating physician. Here, no one contends that SJMC failed to document anything or that it possessed any information that Walker's physicians lacked.[3]

**B.      Dr. Camazine's discussion of the breach of the standard of care is conclusory.**

According to Dr. Camazine, SJMC breached the standard of care by "[a]llowing Mr. Walker to be discharged prematurely despite known unresolved cardiac-pulmonary issues and poor glycemic control." We agree with SJMC that Dr. Camazine's opinion that it breached the standard of care is conclusory.

Dr. Camazine does not identify the "cardiac-pulmonary issues" that were both "known" by SJMC and "unresolved" at the time of Walker's discharge. Although the only conditions he related to Walker's death were myocardial infarction and pneumonia, he does not contend that these conditions were "known" to SJMC. As Dr. Camazine himself points out, even Walker's physicians did not detect these conditions. Dr. Camazine does not contend that SJMC's staff had an independent duty to "know" or "resolve"—that is, to diagnose and treat— conditions that allegedly were not detected or sufficiently addressed by Walker's

---

[3] A second failure-to-document case cited by Walker's survivors is factually distinguishable for the same reason. *See Gannon v. Wyche*, 321 S.W.3d 881 (Tex. App.— Houston [14th Dist.] 2010, pet. denied).

7

physicians, who—unlike SJMC's nursing staff—were actually licensed to do so. *Compare* TEX. OCC. CODE ANN. § 151.002(a)(13) (West Supp. 2013) ("'Practicing medicine' means the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method . . . .") *with id.* § 301.002 ("'Professional nursing' . . . does not include acts of medical diagnosis or the prescription of therapeutic or corrective measures.") *and id.* § 301.004 ("[The Nursing Practice Act] does not authorize the practice of medicine . . . .").

Dr. Camazine's statement about "poor glycemic control" suffers from the opposite problem:  physicians *did* detect and treat this condition, initiating "an aggressive insulin regimen" five hours before Walker's discharge.  Dr. Camazine does not contend that the treatment that was instituted at that time was in any way inappropriate, and he does not explain why it was premature to discharge Walker *after* instituting appropriate treatment.[4]

Finally, Dr. Camazine listed some actions that SJMC's staff could take "*if* they feel that the patient is not ready for discharge," but he does not contend that SJMC's staff *knew or should have known* that Walker's discharge was premature. In the absence of such actual or constructive knowledge, there were no "concerns" for SJMC's staff to express.

Because we conclude that Dr. Camazine's reports fall short of statutory standards on the interrelated issues of the standard of care and its breach, we sustain the sole issue presented without addressing SJMC's arguments concerning causation.

---

[4] Moreover, Dr. Camazine's reference to "poor glycemic control" is a red herring, inasmuch as he does not relate that condition to Walker's myocardial infarction, pneumonia, or death.

8

**C. SJMC is entitled to recover reasonable attorney's fees and costs in an amount to be determined by the trial court.**

Because Walker's survivors failed to produce an expert report that satisfies statutory requirements, SJMC is entitled to recover its reasonable attorney's fees and costs incurred. *See Lewis v. Funderburk*, 253 S.W.3d 204, 207–08 (Tex. 2008) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.351); *Hightower v. Baylor Univ. Med. Ctr.*, 348 S.W.3d 512, 521–22 (Tex. App.—Dallas 2011, pet. denied). SJMC asked that if we determined that the claimants failed to produce an expert report meeting statutory requirements, we either (1) reverse and render judgment assessing attorney's fees and dismissing the claims against it with prejudice, or (2) reverse and remand the cause with instructions to the trial court to assess statutory attorney's fees and dismiss the case with prejudice.

Although this court can review an award of fees and costs, the initial determination of a reasonable amount falls in the first instance to the trial court. *Cf. Awoniyi v. McWilliams*, 261 S.W.3d 162, 166 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (addressing sufficiency of the evidence presented to the trial court in determining the amount of the award). Where the trial court fails to consider the matter, remand is appropriate to allow the court to do so. *See Rivenes v. Holden*, 257 S.W.3d 332, 341 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). We accordingly reverse and remand the case.

## IV. CONCLUSION

Because the standard of care as stated in Dr. Camazine's original and amended expert reports lacks specificity and his opinion that SJMC breached the standard of care is conclusory, we hold that the trial court abused its discretion in failing to assess attorney's fees and costs and dismiss the claims against SJMC. We therefore reverse the judgment and remand the cause with instructions to the

9

trial court to (a) sever the claims against SJMC from the remainder of the action, (b) assess and award to SJMC its reasonable attorney's fees and costs incurred, and (c) dismiss the claims against SMJC with prejudice in accordance with this opinion.


/s/    Tracy Christopher
Justice


Panel consists of Justices Boyce, Christopher, and Brown.