

# NUMBER 13-22-00005-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ELIAZAR COSTILLA, INDIVIDUALLY
AND AS THE REPRESENTATIVE OF
THE ESTATE OF KRISTY RENEE
COSTILLA, DECEASED, AND AS
NEXT FRIEND OF A.J.C. AND C.K.C.,
MINORS; MELINDA RODRIGUEZ LEAL
AND CAMILO TREVINO,                                                    Appellants,

v.

ATIYA DHALA, M.D.,                                                        Appellee.

On appeal from the 197th District Court
of Cameron County, Texas.

## MEMORANDUM OPINION

Before Justices Tijerina, Silva, and Peña
Memorandum Opinion by Justice Tijerina

Appellants/cross-appellees Eliazar Costilla, individually and as the representative

of the estate of Kristy Renee Costilla, deceased, and as next friend of A.J.C. and C.K.C., minors; Melinda Rodriguez Leal; and Camilo Trevino (collectively Costilla) appeal the trial court's order (1) sustaining appellee/cross-appellant Atiya Dhala, M.D.'s objections to Costilla's supplemental expert report and (2) granting Dr. Dhala's motion to dismiss in a Chapter 74 healthcare liability claim. By several multifarious issues, which we analyze as a single issue, Costilla argues that the trial court erred in dismissing their claims against Dr. Dhala with prejudice because Costilla served Dr. Dhala with a statutorily-compliant expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (providing for expert report requirements in health care liability actions).

By a single issue, Dr. Dhala asserts that the trial court erred in awarding her attorney's fees and costs in the amount of $0. *See id.* § 74.351(b). We affirm in part and reverse and remand in part.[1]

## I.    BACKGROUND

On September 24, 2018, forty-one-year-old Kristy arrived at Valley Baptist Medical Center-Harlingen with symptoms of a hemorrhagic stroke.[2] Following a CT scan, Kristy was diagnosed with a subarachnoid hemorrhage (brain bleed) at 9:30 p.m., and she was transferred to the Intensive Care Unit at 11:50 p.m. At approximately 3:10 a.m., Kristy began experiencing seizures. She was intubated and put on mechanical ventilation. Ultimately, her condition worsened, and she passed away at 5:01 p.m. on September 25,

---

[1] Dr. Dhala filed a motion to strike the appendix to Costilla's brief, which we hereby grant. *See Warriner v. Warriner*, 394 S.W.3d 240, 254 (Tex. App.—El Paso 2012, no pet.) (holding that documents attached to a brief as an exhibit or an appendix, but not appearing in the clerk's record, cannot be considered on appellate review).

[2] We refer to the decedent by her first name for ease of reference.

2

2018.

On September 22, 2020, Costilla filed a healthcare liability claim against ten medical professionals and entities including Dr. Dhala, a critical care physician.[3] Costilla did not allege any specific action or inaction of Dr. Dhala other than general negligence. That same day, Costilla filed three expert reports by Van V. Halbach, M.D., Michael Griffith, RN, and Erwin A. Cruz, M.D. in accordance with § 74.351. *See id.* § 74.351(a) ("In a health care liability claim . . . a claimant shall . . . serve on [a defendant health care provider] one or more expert reports, with a curriculum vitae [CV] of each expert listed in the report.").

On January 12, 2021, Dr. Dhala objected to the expert reports, asserting: (1) the experts were unqualified to render opinions as they apply to her because she is a critical care physician, and the experts are professors and do not practice in the fields of internal medicine; (2) Costilla failed to attach the purported experts' CVs; and (3) the reports were insufficient as to the standard of care, breach, and causation, as it pertains to her. According to Dr. Dhala's motion, she was not involved in Kristy's care or treatment until approximately 7:27 a.m. on September 25, which is after the critical events discussed in the expert reports.

On April 13, 2021, Costilla responded generally asserting that the expert reports were sufficient and attached each experts' CV. According to Costilla, the standard of care is "one size fits all," and the expert reports identified a breach of the "one size fits all"

---

[3] The remaining defendants are: Valley Baptist Medical Center-Harlingen; registered nurse Adrian Alaniz; registered nurse Kristen White; nurse practitioner Octavio Aguilera; the Schumacher Group of Texas, Inc.; internist George Huddleston IV, M.D.; radiologist Tim Taw, M.D.; Wondwossen Tekle, M.D. None are parties to this appeal.

standard because all physicians failed to diagnose an impending brain herniation. Following a hearing, the trial court denied Dr. Dhala's objections on April 27, 2021.

On May 24, 2021, Dr. Dhala moved to dismiss the cause contending that the expert reports failed to represent a "good faith" effort to comply with the statute. *See id.* § 74.351(l) ("A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report . . . ."). On September 2, 2021, the trial court held a hearing on Dr. Dhala's motion to dismiss and granted Costilla a thirty-day extension to cure deficiencies in the expert reports, as the reports did not mention Dr. Dhala. *See id.* § 74.351(c) (providing that if "elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order the cure the deficiency").

On October 5, 2021, thirty-three days later, Costilla filed Dr. Halbach's amended expert report.[4] In the amended report, Dr. Halbach addressed Dr. Dhala in which he stated, "We learn[ed] later from Dr. Dhala that she had no knowledge of [Kristy] being admitted to her ICU for which she was on call and had no input in her care until the following day at 7AM."

On October 25, 2021, Dr. Dhala objected to Dr. Halbach's amended expert report and filed a second motion to dismiss.[5] Dr. Dhala asserted Dr. Halbach's amended report,

---

[4] Dr. Dhala did not argue she was not timely served with the expert reports.

[5] The trial court granted Dr. Dhala's first motion to dismiss Costilla's claims against her with prejudice on October 21, 2021. This order appears to be inexplicable, and the parties do not address it or complain about it.

was so lacking as to her, it constituted "no report." Furthermore, Dr. Dhala asserted that Dr. Halbach does not establish any standard of care applicable to her as an on-call intensivist physician, does not explain how she breached that standard of care, and does not state how the alleged breach caused Kristy's death.

Following a hearing on December 9, 2021, the trial court sustained Dr. Dhala's objections to Dr. Halbach's amended expert report, and it granted Dr. Dhala's second motion to dismiss. The trial court severed its order granting Dr. Dhala's motion to dismiss from the original proceeding, and it awarded Dr. Dhala $0 in attorney's fees and costs. Dr. Dhala challenges the trial court's award of attorney's fees and costs pursuant to § 74.351(b). *See id.*[6]

## II.    STANDARD OF REVIEW & APPLICABLE LAW

Texas Civil Practice and Remedies Code provides that a plaintiff in a health care liability suit must serve the medical defendant with an expert report that complies with § 74.351 and is accompanied by the expert's CV. *See id.* § 74.351. If a plaintiff fails to do so within 120 days after the defendant's original answer is filed, then the trial court must dismiss the claim with prejudice on the defendant's motion. *See id.* § 74.351(a), (b)(2).

The goal of the statute is "to deter frivolous lawsuits by requiring a claimant early

---

[6] Dr. Dhala asserts that we lack jurisdiction over this appeal because the trial court granted her motion to dismiss with prejudice pursuant to § 74.351(b), and § 54.014(10) only allows interlocutory appeals from orders *denying* § 74.351(b) relief. *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 54.014(10) (emphasis added). While we agree with Dr. Dhala in principle, here the trial court severed the claims against Dr. Dhala pursuant to Dr. Dhala's request. This severance transformed the interlocutory order granting Dr. Dhala's motion to dismiss into a final and appealable judgment as to Dr. Dhala, a judgment which Dr. Dhala appeals in part via cross-appeal. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192–93 (Tex. 2001) (providing that an order is final for purposes of appeal if it finally disposes of all claims and parties before the court). Accordingly, we conclude we have jurisdiction over this appeal, and we address the merits of both parties' appeal.

in litigation to produce the opinion of a suitable expert that his claim has merit." *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017) (citing *Scoresby v. Santillan*, 346 S.W.3d 546, 552 (Tex. 2011)); *see also Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018) (per curiam). The report must provide a fair summary of the expert's opinions regarding applicable standards of care, the manner in which the care rendered by the health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6).

"A trial court must sustain a challenge to a report's adequacy if the report does not represent an objective good faith effort to provide a fair summary of the applicable standard of care, the defendant's breach of that standard, and how that breach caused the patient's harm." *Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 513 (Tex. 2017) (per curiam) (cleaned up); *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.351(l), (r)(6). "A good-faith effort must 'provide enough information to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question, and (2) it must provide a basis for the trial court to conclude that the claims have merit." *Miller*, 536 S.W.3d at 513 (quoting *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam)). "All information needed for this inquiry is found within the four corners of the expert report, which need not 'marshal all the plaintiff's proof' but must include the expert's opinion on each of the three main elements: standard of care, breach, and causation." *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010) (citing *Am. Transitional Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001)). "A report

6

that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill these two purposes." *Palacios*, 46 S.W.3d at 879; *New Med. Horizons, II, Ltd. v. Milner*, 575 S.W.3d 53, 60 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *see Scoresby*, 346 S.W.3d at 556 ("No particular words or formality are required, but bare conclusions will not suffice.").

If there are multiple defendants in a suit, the expert report must be sufficient as to each defendant individually, and it must implicate the defendant's conduct. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a); *Ogletree v. Matthews*, 262 S.W.3d 316, 322 (Tex. 2007). A claimant can fail to serve an expert report as to a defendant when "[a] claimant serves a report in an attempt to satisfy all the requirements for an 'expert report'" as to other defendants, but the report does not implicate the conduct of the defendant in question. *Thomas v. Torrez*, 362 S.W.3d 669, 672 (Tex. App.—Houston [14th Dist.] 2011, pet. dism'd) (concluding that multiple passing references to a named defendant in an expert report were not sufficient to implicate that defendant, and it was "no report" as to her). A report, however, does not implicate a defendant's conduct merely because the provider is a named defendant in the lawsuit. *Id.* "[A] defendant's conduct is implicated when an expert report is 'directed primarily' to care provided by the defendant, and the report informs the defendant of specific conduct called into question and provides a basis for the trial court to determine that the claim has merit." *Beckwith v. White*, 285 S.W.3d 56, 62 (Tex. App.—Houston [1st Dist.] 2009, no pet) (citation omitted).

We review a trial court's ruling on the sufficiency of an expert's report and on a motion to dismiss for an abuse of discretion. *Miller*, 536 S.W.3d at 512. "A trial court

7

abuses its discretion if it rules without reference to guiding rules or principles." *Id.* at 512–513 (internal citations omitted).

### III.     DR. HALBACH'S AMENDED EXPERT REPORT[7]

First, Costilla asserts that the amended expert report[8] must be "liberally construed" in his favor. However, we find no case law to support Costilla's assertion that expert reports must be "liberally construed," so we decline to adopt that standard here. *See id.* Next, Costilla argues that the amended expert report adequately addresses the standard of care, the breach of the standard of care, and causation.

Dr. Halbach's entire evaluation of Dr. Dhala is as follows:

> It is also below the standard of care for the intensivist, Dr. Dhala who was covering the ICU during this time was [sic] unaware that [Kristy] was admitted or aware of her condition and progressive neurological changes . . . . We learn later from Dr. Dhala that she had no knowledge of [Kristy] being admitted to her ICU for which she was on call and had no input in her care until the following day at 7AM.

That is the extent of Dr. Halbach's purported evaluation and critique of Dr. Dhala. Dr. Halbach does not explain what Dr. Dhala did or failed to do that caused Kristy's injuries

---

[7] For purposes of this analysis, we assume but do not decide that Dr. Halbach was qualified to render an expert opinion regarding Dr. Dhala.

[8] In his brief, Costilla repeatedly refers to Dr. Cruz's initial expert report. However, an "amended expert report served after a thirty-day extension granted by the trial court super[s]edes the initial report filed by the claimant." *Otero v. Leon*, 319 S.W.3d 195, 205 (Tex. App.—Corpus Christi–Edinburg 2010, pet. denied); *see McQuillen v. Lubbock Heart Hosp., LLC*, 646 S.W.3d 336, 344 (Tex. App.—Amarillo 2022, pet. denied) (finding that the amended expert report "became the operative report for all purposes" where the trial court found the initial expert report to be deficient); *HealthSouth Corp. v. Searcy*, 228 S.W.3d 907, 909 (Tex. App.—Dallas 2007, no pet.) ("Because an amended filing supplants the previously filed document, Dr. Koslow's second amended expert report is the document before the trial court and this Court."); *see also Jacquez v. VHS San Antonio Partners, LLC*, No. 04-20-00097-CV, 2021 WL 41149, at *3 n.3 (Tex. App.—San Antonio Jan. 6, 2021, pet. denied) (mem. op.) (referring to the expert's second report "because this was the revised report that the appellants filed . . . after the trial court gave them 30 days to cure the deficiencies in their original filing"). Therefore, we do not consider Dr. Cruz's initial expert report.

8

other than being "unaware" Kristy was admitted or "aware" of her condition. Dr. Halbach does not provide specific information about what Dr. Dhala should have done differently, and we are unable to determine what a prudent physician should have done under these circumstances. *See Bailey v. Amaya Clinic, Inc.*, 402 S.W.3d 355, 366 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("Standard of care is defined by what an ordinarily prudent health care provider or physician would have done under the same or similar circumstances."); *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (stating that the expert report must provide specific information about what each defendant would have done differently); *Longino v. Crosswhite*, 183 S.W.3d 913, 915 (Tex. App.—Texarkana 2006, no pet.) (same). Being "aware" or "unaware" of Kristy's condition while Dr. Dhala was "on call" on September 24 is not a statement of a standard of care. *See Palacios*, 46 S.W.3d at 880 ("The statement the Palacioses rely upon—that precautions to prevent Palacios' fall were not properly used—is not a statement of a standard of care."); *McIntyre v. Smith*, 24 S.W.3d 911, 914–15 (Tex. App.—Texarkana 2000, pet. denied) ("[T]he expert must explicitly state the standard of care and explain how the defendant's acts met or failed to meet that standard."); *see also Norris v. Tenet Hous. Health Sys.*, 14-04-01029-CV, 2006 WL 1459958, at *7 (Tex. App.—Houston [14th Dist.] May 30, 2006, no pet.) (mem. op.) (providing that "a trial court does not abuse its discretion in dismissing a suit in which one is required to infer the standard of care from the allegations in the expert report").

Moreover, an expert must "discuss how that defendant breached the applicable standard of care." *Wood v. Tice*, 988 S.W.2d 829, 831 (Tex. App.—San Antonio 1999,

9

pet. denied). From Dr. Halbach's statements regarding Dr. Dhala, neither the trial court nor Dr. Dhala would be able to determine how Dr. Dhala deviated from a standard of care or how Dr. Dhala's actions caused Kristy's injuries. *See Sinha v. Thurston*, 373 S.W.3d 795, 800–01 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (providing that an expert report that did not implicate the physician's conduct constituted no report as to the physician). Conversely, Dr. Halbach states that Dr. Dhala "had no knowledge of [Kristy] being admitted to [the] ICU for which she was on call and had no input in her care until the following day." Thus, we are unable to glean from Dr. Halbach's amended expert report how Dr. Dhala was in any way involved in treating Kristy on September 24–25, and "omissions may not be supplied by inference." *Scoresby*, 346 S.W.3d at 556; *Jelinek*, 328 S.W.3d at 539–40 (providing that the expert must "explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented"); *Boyles v. Corpus Christi Cardiovascular & Imaging Ctr. Mgmt.*, 622 S.W.3d 420, 426 (Tex. App.—Corpus Christi–Edinburg 2020, no pet.) ("A court may not fill in gaps in a report by drawing inferences or guessing what the expert meant or intended" because "causation may not be inferred.").

The purpose of the expert report requirement is to inform the defendant health care provider of the specific conduct called into question and provide a basis for the trial court to conclude that the plaintiff's claims have merit. *See Jernigan v. Langley*, 195 S.W.3d 91, 94 (Tex. 2006) ("[E]ven if we assume that the reports address the standard of care . . . neither report addresses how *Dr. Jernigan* breached the standard or how his unstated breach of duty caused John's death with sufficient specificity for the trial court,

10

and Jernigan, to determine that the allegations against Jernigan had any merit."). There was nothing in Dr. Halbach's expert report that linked Dr. Dhala to Kristy's injuries, and we are unable to determine how Dr. Dhala contributed to Kristy's injuries. Because Dr. Halbach's amended expert report failed to cure any previously identified defects following a thirty-day extension, we conclude the trial court properly granted Dr. Dhala's motion to dismiss with prejudice. *Pacheco-Serrant v. Munoz*, 555 S.W.3d 782, 792 (Tex. App.—El Paso 2018, no pet.) (holding that if deficiencies found by a court in an expert report are not cured after one thirty-day extension, the plaintiff's claim must be dismissed with prejudice); *Barber v. Mercer*, 303 S.W.3d 786, 793 n.3 (Tex. App.—Fort Worth 2009, no pet.) (recognizing that plaintiff has only one opportunity to amend a deficient expert report); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c) (providing that the court may grant just one 30-day extension to the claimant to cure a deficient expert report). We overrule Costilla's sole issue.

## IV.    ATTORNEY'S FEES

By her sole issue, cross-appellant Dr. Dhala argues that the trial court abused its discretion in awarding her $0 in attorney's fees because § 74.351(b) mandates that attorney's fees and costs be awarded upon dismissal.

### A.    Standard of Review

We review the amount of attorney's fees awarded under a legal sufficiency standard. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 487 (Tex. 2019). We may sustain a legal sufficiency challenge only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving

11

weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017); *see also Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014) (op. on reh'g). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

## B.    Applicable Law

Section 74.351(b) expressly states if "an expert report has not been [timely] served" then the trial court "shall . . . enter an order" that "awards to the affected physician . . . reasonable attorney's fees and costs of court incurred by the physician." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b)(1). The Supreme Court of Texas held that a timely but deficient report is one that "has not been served," such as the report at issue here. *Lewis v. Funderburk*, 253 S.W.3d 204, 207 (Tex. 2008) ("[T]he Legislature made clear that when it used the words 'an expert report has not been served,' it meant to include cases in which an inadequate report *has* been served."). Thus, when a timely but deficient expert report has been filed, the defendant is entitled to attorney's fees. *See id.*; *Hightower v. Baylor Univ. Med. Ctr.*, 348 S.W.3d 512, 522 (Tex. App.—Dallas 2011, pet. denied) (providing that "automatic attorney's fees sanction [in § 74.351(b)(1)] comes into play when a timely but deficient expert report has been filed"). Therefore, Dr. Dhala has

12

conclusively established that she is entitled to an award of attorney's fees incurred while defending against Costilla's suit.

Dr. Dhala must also establish that the requested attorney's fees are reasonable. *Rohrmoos*, 578 S.W.3d at 487 (providing that the prevailing party has the burden to prove that legal authority permits the recovery of attorney's fees and that the requested attorney's fees are reasonable and necessary). Whether an award of attorney's fees is reasonable is a question of fact; we review the reasonableness of the amount of the attorney's fees awarded for sufficiency of the evidence. *Sundance Minerals, L.P. v. Moore*, 354 S.W.3d 507, 513 (Tex. App.—Fort Worth 2011, pet. denied).

When evaluating the reasonableness of an attorney's fee, courts should consider the *Arthur Andersen* factors, including: (1) the time and labor required, the difficulty of the legal issue, the skill required; (2) the likelihood that accepting the employment will preclude the attorney from other employment; (3) the fee customarily charged for similar services; (4) the amount involved and the results; (5) the time limitations; (6) the nature and length of relationship with client; (7) the experience, reputation, and ability of the lawyer; and (8) whether the fee is fixed or contingent. *Sundance Minerals*, 354 S.W.3d at 513–14 (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). Evidence for each factor is not required to decide reasonableness. *Id.* Additionally, billing records to support an award of attorney's fees are not required but may be instructive and are strongly encouraged. *Rohrmoos*, 578 S.W.3d at 502. A party requesting an award of attorney's fees bears the burden of documenting the hours expended on the litigation and the value of those hours so that the trial court may have

13

access to sufficient information to make a meaningful evaluation of the requested amount. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761–62 (Tex. 2012).

"Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Rohrmoos*, 578 S.W.3d at 498. "This base lodestar figure should approximate the reasonable value of legal services provided in prosecuting or defending the prevailing party's claim through the litigation process," and "is the standard for calculating the reasonableness and necessity of attorney's fees in" this situation. *Id.* To support the requested amount of attorney's fees, parties frequently rely on the testimony or affidavit of the attorney of record. *See id.* at 476; *El Apple*, 370 S.W.3d at 759.

## C.    Discussion

The trial court awarded $0 in attorney's fees, so we look for evidence presented at trial supporting this amount. *See Rohrmoos*, 578 S.W.3d at 503. At the motion to sever hearing, counsel testified that he is a partner in a law firm, and his entire twenty-four years of practice has been devoted to the field of medical malpractice defense. Currently, his rate is $190 per hour, which he stated was reasonable and customary in the South Texas region, especially Brownsville. He also employed a paralegal for this case at a rate of $80 an hour.

According to counsel, Costilla filed suit one year ago, and the parties comprised of ten defendants and six plaintiffs. As of the date of the hearing, he spent a total of 140

14

hours in the case conducting the initial investigation, answering suit, preparing and responding to motions, conducting limited discovery, and filing and responding to Costilla's expert reports. Counsel specified that sixty-five hours were directly related to reviewing and responding to the expert reports, which included providing objections, preparing orders in response to the trial court's ruling overruling the objections and motion, attending that motion's hearing, filing a motion to dismiss and an amended motion to dismiss, having another hearing, conducting proper research and reviewing case law, and conferring with the parties regarding the various motions that had been filed by all ten defendants, which included reviewing their objections to the expert reports and their motions to dismiss, and participating in those hearings as well.

Additionally, counsel testified: he spent three hours preparing Dr. Dhala's response to the pleadings, including answers and a jury demand; 5.5 hours preparing for initial discovery after the trial court overruled his initial objections; 3.5 hours reviewing codefendants' answers and pleadings; 8.1 hours reviewing codefendants responses to limited discovery; 7.7 hours reviewing Costilla's responses to discovery, including initial disclosures that were served and responded to; and 2.3 hours preparing for Dr. Dhala's responses to initial disclosures.

He further spent twenty hours in the preliminary investigation, including reviewing all medical records and materials; 2.8 hours reviewing two motions and orders unrelated to the Chapter 74 expert report but were necessary as part of his development of the defense; 11.1 hours reviewing all appellate pleadings by codefendants; and at least three hours preparing and reviewing Dr. Dhala's appeal. This totaled to $26,600.

15

Counsel stated his paralegal spent eighteen hours on this case for a total of $1,440 for her time in collecting, identifying, and preparing medical records for review, identifying potential witnesses, and assisting with discovery and preparing motions to dismiss. Counsel further testified that he had total costs in the amount of $460, so his total expenses in this case were $28,460.

Counsel's testimony established several of the *Andersen* prongs, including: (1) the time and labor required; (2) the fee customarily charged in the locality for similar legal services; and (3) amount involved and results obtained. *See Arthur Andersen*, 945 S.W.2d at 818; *cf Rohrmoos*, 578 S.W.3d at 503 (holding that the attorney's testimony that he searched through "millions" of emails and reviewed "hundreds of thousands" of papers in discovery, took more than forty depositions, and drafted a forty-page motion for summary judgment was too general to establish reasonableness and necessity of his request for $800,000 in attorney's fees because it lacked sufficient detail about the work done and how much time was spent on the tasks); *see also Bishara v. Tex. Health Harris Methodist Hosp. Fort Worth Inc.*, No. 02-20-00316-CV, 2021 WL 3085748, at *6 (Tex. App.—Fort Worth July 22, 2021, no pet.) (mem. op.) (finding the evidence insufficient for attorney's fees when counsel's affidavit contained "no information regarding exactly what legal work was done for the Hospital, the time spent, the expertise required, or his normal hourly rate").

In accordance with the minimum requirements as set out in *Rohrmoos*, counsel here provided evidence of the particular services performed, who performed them, approximately when they were performed, the reasonable amount of time required to

perform the services, and the reasonable hourly rate for performing the services. "Because there is some evidence in this case that attorney's fees were both incurred and reasonable, the trial court should have awarded attorney's fees to Dr. [Dhala]." *Garcia v. Gomez*, 319 S.W.3d 638, 643 (Tex. 2010) ("Because there was some evidence of these fees, the trial court erred in failing to make an award, and the court of appeals erred in affirming that part of the trial court's judgment."). Therefore, we conclude that the trial court's award of $0 in attorney's fees was unreasonable, "and we remand the physician's attorney's fees claim to the trial court for further proceedings." *See id.* at 643–44; *Sundance Minerals, L.P.*, 354 S.W.3d at 513. Accordingly, we sustain Dr. Dhala's sole issue.

## V. CONCLUSION

We affirm the trial court's judgment dismissing Costilla's claims with prejudice against Dr. Dhala. We reverse the trial court's award of $0 in attorney's fees, and we remand the issue of attorney's fees to the trial court for a redetermination of attorney's fees consistent with this opinion.

JAIME TIJERINA
Justice

Delivered and filed on the
2nd day of November, 2023.

17